Argued July 11; peremptory writ dissolved July 12, 1933

## ZIMMERMAN ET AL. *v.* HOSS

(23 P. (2d) 897)

*I. H. Van Winkle,* Attorney General, for appellant Hal E. Hoss.

*W. S. U'Ren,* of Portland, for appellants Charles H. Wieder and another.

*Earl A. Nott,* of McMinnville, for respondents.

BAILEY, J. On July 3, 1933, Peter Zimmerman, Morton Tompkins and Albert Slaughter as plaintiffs filed a petition in the circuit court of the state of Oregon for Marion county, against Hal E. Hoss, secretary of state, for an alternative writ of mandamus directing and commanding the defendant to certify forthwith the names of the plaintiffs and each of them, as candidates for the office of member of the state power commission, to the county clerks of the several counties of the state of Oregon, or to show cause, if any, why a peremptory writ of mandamus should not issue. Upon the filing of this petition an alternative writ of mandamus was issued, directed to the secretary of state and requiring him to appear on July 5, 1933, to show cause why a peremptory writ of mandamus should not issue. Thereafter, Charles H. Wieder and E. B. Hall, president and vice president, respectively, of the Security Owners Association, were permitted to and did intervene. Demurrers to the alternative writ were filed by both the secretary of state and the interveners. On July 5 the demurrers were overruled and a judgment and order entered to the effect that a peremptory writ of mandamus issue as prayed for in the petition; from which judgment this appeal is prosecuted.

The 1933 legislature passed Senate bill 244, now known as chapter 357, Oregon Laws 1933, relating to and providing for the development, transmission, distribution and sale of power by the state of Oregon, creating a power commission, and abolishing the hydroelectric commission of the state of Oregon. This act contained an emergency clause providing that the act should be in full force and effect from and after its passage. Thereafter, on April 15, the interveners herein presented to the secretary of state a referendum petition demanding that the bill hereinbefore

mentioned be referred to the people of the state of Oregon for their approval or rejection, and that the said secretary of state present the same to the attorney general for a ballot title, so that the petition could be circulated for signatures. Upon the refusal of the secretary of state to file said petition an alternative writ was issued by this court, directed to him, to show cause why a premptory writ should not issue. On April 26, 1933, this court held that the act itself contained provisions "regulating taxation or exemption" and that therefore the emergency clause was invalid and ordered that the peremptory writ issue. *Weider v. Hoss,* 143 Or. 57 (21 P. (2d) 227).

It is alleged in the alternative writ herein that on or about June 6, 1933, "certain pretended petitions were filed with" the secretary of state, "petitioning and requesting" him "to cause said act to be referred to the voters of the state of Oregon to be voted on at the special election to be held on the twenty-first day of July, 1933". Thereafter, on June 20, 1933, there was filed in the circuit court of the state of Oregon for Marion county a suit entitled, "State of Oregon ex rel. I. H. Van Winkle, Attorney General", against Hal E. Hoss, secretary of state, and the interveners herein, to enjoin said secretary "from referring said act to the voters of the state of Oregon" and from causing it to be "placed on the printed ballots to be distributed and used at said special election to be held on the twenty-first day of July, 1933". On June 27 an order was duly made and entered by the judge of the circuit court, restraining and enjoining the secretary of state from certifying to the county clerks of the several counties "the said act as a referendum measure to be printed upon the ballots and submitted to the people of the state to be voted on at said election". At

the same time, that court entered an order granting to the plaintiff sixty days from June 27, 1933, in which to furnish to the defendant a bill of particulars, and allowing the intervening defendants thirty days thereafter in which to file their answer in said cause. Said orders are still in full force and effect.

With reference to the above mentioned injunction suit, the alternative writ contains the following averments:

"V. That plaintiffs are informed and believe and therefore allege that it will be impossible for the plaintiffs in said injunction suit to furnish the bill of particulars in compliance with the order of said court in time to bring said cause to issue and trial prior to the said election to be held on the 21st day of July, 1933, and that because of said facts and because of and on account of the said orders so issued in said cause by the said circuit court of Marion county, state of Oregon, said cause will not and can not be finally determined upon its merits until after the holding of said special election.

"VI. Plaintiffs allege upon information and belief that because of the issues raised by the pleadings and said injunction suit the plaintiff in said cause must and will make a further and extended investigation throughout the state of Oregon and in preparation for trial before said injunction suit can be heard and determined on its merits and that such investigation and preparation must and will require approximately sixty days' time from and after the date of the making of said order requiring and furnishing of said bill of particulars. Plaintiffs further allege upon information and belief that after said investigation and preparation for trial by plaintiff have been made and said bill of particulars furnished to the intervening defendants in accordance with the said order, said defendants must and will require and consume approximately thirty days' time in which to investigate the informa-

tion so ordered to be furnished them by said plaintiff before the said defendants can answer and be prepared to defend therein.

"VII. That because of the facts alleged and set forth in Paragraphs V and VI hereinabove, the said Act can not and will not be referred to the voters of the state of Oregon for their approval or rejection in the special election to be held on the 21st day of July, 1933.

"VIII. That because of the facts hereinabove set forth and alleged said pretended referendum petitions filed with defendant on the 6th day of June, 1933, are void, inoperative and of no effect and said Act, to wit: Chapter 357 of the Oregon Laws of 1933, is a valid, subsisting statute of said state in full force and effect as of and from the 9th day of June, 1933."

The alternative writ further states that each of the plaintiffs herein filed with the secretary of state his declaration of candidacy for office as a member of the power commission, and that at the time of filing said declaration deposited with the secretary of state the sum of $50, the fee required by law to be paid by candidates for said office.

The thirty-seventh legislative assembly adjourned March 9, and all acts passed during the 1933 session of the legislature, except emergency measures, took effect, if the referendum was not invoked, ninety days from the end of the session: Constitution of Oregon, article IV, § 28. As the legislature is prohibited from declaring an emergency in any act regulating taxation or exemption (Constitution, article 9, § 1-a), senate bill 244, known as chapter 357, Oregon Laws 1933, could not, in any event, have become effective before June 9, 1933.

■ In referring to the declarations of candidacy filed by the plaintiffs herein, the alternative writ states that

the same were filed "within the period provided by law". This averment is a mere conclusion of law and is not admitted by the demurrers. It is for the court to say, from the facts alleged, whether or not these declarations were filed as required by law.

There is, however, a more serious objection with reference to the filing of these declarations. Senate bill 244 provides that "the first commission shall be elected at the first regular general biennial election, or special general election held throughout the state of Oregon, subsequent to the passage of this act"; and that "if the members of the first commission shall be elected at a special election, said candidates fifty days before the date of such special election shall file for that election in the same manner as provided for filing in a primary election by such candidates".

The act in question would not, in any event, have become a law previous to some forty-one days before the special election of July 21, and therefore there was no law in effect permitting declarations of candidacy to be filed fifty days before the special election, or authorizing the secretary of state to accept any such declarations for filing. Any attempt to file a declaration of candidacy for an office which did not then exist, and for which filing there was no authority, was absolutely ineffective and void.

Senate bill 244 as passed contained, as we have already pointed out, an emergency clause, which, had it been valid, would have made the act immediately a law; and there would have been ample time for candidates to file their declarations for the July election. Had the legislature contemplated that this bill would not become effective in any event before June 9, 1933, and had it intended that the members of the first commission be elected at the July 21 special election, it un-

doubtedly would have shortened the time in which declarations of candidacy might be filed prior to the election. Even had the referendum not been invoked against this act, members of the commission could not have been voted for at the July election, for the reason above stated.

The plaintiffs earnestly contend that since chapter 440, Oregon Laws 1933, providing for a special election to be held on July 21, 1933, requires that all measures passed by the 1933 legislature against which the referendum is invoked shall ''be submitted to the people for their approval or rejection'' at said election, and that unless the referendum invoked against senate bill 244 is voted upon at said special election, said referendum becomes null and void and said bill becomes a law as of June 9, 1933, ninety days after the adjournment of the thirty-seventh legislative assembly. In support of this contention it is asserted that the circuit court for Marion county has, by injunction and otherwise, prevented the bill from being voted upon at said special election.

Section 1 of article IV of our constitution, concerning initiative and referendum measures, provides in part as follows: ''All elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise. * * * Petitions and orders for the initiative and for the referendum shall be filed with the secretary of state, and in submitting the same to the people he, and all other officers, shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor''.

It will be seen that this provision of our constitution contemplates the enactment of other legislation to govern, to some extent, the exercise of the power conferred upon the people with reference to the initiative and referendum. In pursuance of this authority, the legislature has enacted laws relating to the preparation, circulation and filing of initiative and referendum petitions. Section 36-2005, Oregon Code 1930, passed in 1907, provides that if the secretary of state shall refuse to accept and file any petition for the initiative or for the referendum, any citizen may apply to the court for a writ of mandamus to compel him to do so. The statute further provides that "on a showing that any petition filed is not legally sufficient, the court may enjoin the secretary of state and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure. All such suits shall be advanced on the court docket and heard and decided by the court as quickly as possible. Either party may appeal to the supreme court within ten days after a decision is rendered".

Presumably in conformance with this statute the injunction suit above mentioned was instituted in Marion county. Although the alternative writ does not definitely state that the petitions filed with the secretary of state on June 6, 1933, contained sufficient signatures, nevertheless it was stated during the argument that said petitions contained in excess of 21,000 signatures of registered voters, certified to by county clerks, as provided by law. No contention is made that the injunction suit was not properly brought, or that the circuit court did not have authority to issue the temporary restraining order.

■ The question of whether senate bill 244 must be voted upon at the special election in July of this year, if at all, or at some future election, provided that the referendum petitions are found in proper form and containing sufficient signatures of qualified electors, has, we believe, been ably and exhaustively answered by the supreme court of Nebraska in *Barkley v. Pool,* 102 Neb. 799 (169 N. W. 730). In that case a bill passed by the legislature conferring upon women certain voting privileges was referred to the electorate for approval or rejection. Proceedings were instituted to restrain the secretary of state from submitting the bill for a vote at the general election on November 5, 1918, and an appeal was taken to the supreme court from the ensuing order. In referring to the question before it, the court stated:

"The first, and, if answered in the negative, the controlling, question for our consideration is whether the order appealed from, continuing the hearing to a time subsequent to November 5 and restraining the secretary of state from submitting the proposition in the meantime to the voters of the state, was a final order. * * * It is argued that the constitutional provision relating to referendum petitions, which provides that 'elections thereon shall be had at the first regular state election held not less than thirty days after such filing', is mandatory, and that therefore such election must be had upon the day named or not at all."

After declaring that it did not consider the order appealed from final, the court proceeded as follows:

"It is reasonable to suppose that the makers of the constitution would anticipate that petitions might be presented not in compliance with the requirements of the law—petitions invalid for fraud, and other reasons. They would anticipate that questions would arise which are judicial questions, not proper to be decided by a

state official acting only in a ministerial capacity. In the absence of any provision in the constitution, besides the one above quoted, touching the time of the referendum election, a difficult question might arise, however, as to just when and to what extent the courts might interfere by mandamus or injunction. In this case there are other provisions of the constitution which need to be considered. Section 1D of the amendment (Const., art. III) contains this language: 'This amendment shall be self-executing, but legislation may be enacted especially to facilitate its operation. In submitting petitions and orders for the initiative and the referendum, the secretary of state and all other officers shall be guided by this amendment and the general laws until additional legislation shall be especially provided therefor'. The ordering of a referendum suspends the operation of a law until approved by the voters. Section 1C. Following the adoption of the amendment, a law was passed providing that 'any citizen' could obtain a writ of mandamus to compel the secretary of state to file a petition if he wrongfully refused to do so; and also providing that, 'on a showing that any petition filed is not legally sufficient', the secretary of state might be enjoined from submitting the proposition * * *.''

Holding that the court must assume that the lawsuit was instituted in pursuance of the statutory enactments referred to in the above quotation, the opinion then continues:

''We are of opinion that injunction suits may be maintained, and that the enactment providing for them is constitutional. But, when we have gone this far, have we not already answered the question in dispute? Surely, if a lawsuit may be constitutionally commenced, it may be continued until final judgment. If a permanent injunction may be had, its necessary auxiliary, a temporary injunction, may also be had, and become the law for everybody until dissolved. Nor will it be contemplated that obedience to it can deprive

any party of the legal rights that otherwise belong to him. Will the law harbor some opposing principle, in conflict with this rule of justice, which cuts off its processes in the middle of their course? This would be to bring unreason into the law, which is supposed to be harmonious—consistent with itself. The provision of the Constitution permitting this legislation must have the same sanction and force as has the provision fixing the time of the election. If the position contended for will result in denying to either of the parties a trial of their legal rights in court, that amounts to a *reductio ad absurdum*. These are ancient maxims of the law: 'An act of the court shall prejudice no man'. 'The law does not compel a man to do that which he can not possibly perform'. 'That which was originally void does not by lapse of time become valid'.

"Of course, the rights of the petitioners are as much to be regarded as the rights of those objecting to the petition, but no more. We must avoid a rule under which those attacking a petition could, through the necessary delays of a lawsuit, defeat the rights of the petitioners; and we must also avoid a rule under which the rights of the public and those objecting to the petition may be defeated.

"We are of opinion that, if the time required for determining the validity of the petition in court extends to a date beyond that of the next ensuing election, it must be held that, by necessary implication, it was not the intent of the Constitution that either those who petition for a referendum or the objectors to the petition should thereby be defeated of their rights, but that the referendum vote should be had as early as it can be had, awaiting the judgment of the court.

"To hold otherwise would be, on the one hand, to hold that the constitutional right of the people to have referred to them a law may be denied them, or, on the other hand, to hold that a referendum petition, which may be spurious and wanting legal validity in every aspect, may effectually suspend the operation of a law which the legislature has passed."

The foregoing quotations, we believe, fully cover the question now before us. The constitutional provisions there under consideration, as well as the statutory enactments referred to, are similar in many respects to our own constitution and statutes enacted pursuant thereto.

The necessity for an early decision in this matter prevents us from going further into the subject.

The peremptory writ of mandamus is dissolved and the cause remanded to the circuit court with instructions to dismiss the proceedings.