Barkley v. Pool.

---

EDNA M. BARKLEY ET AL., APPELLEES, v. CHARLES W. POOL, SECRETARY OF STATE, APPELLEE: JOHN C. COWIN ET AL., INTERVENERS, APPELLANTS.

FILED NOVEMBER 30, 1918.  No. 20866.

1. Constitutional Provisions: CONSTRUCTION. The general rule is that constitutional provisions are to be construed as mandatory, unless, by express provision or by necessary implication, a different intention is manifest.

2. Statutes: REFERENDUM: ACTION: LACHES. Both the Constitution and the statute relating to referendum contemplate that actions brought under the law shall be speedily commenced and terminated, so that elections may be had, if possible, at the time named in the Constitution. Laches upon the part of those commencing the action or resisting it will justify the court in dismissing the action or defense.

3. Appeal: FINAL ORDER: REFERENDUM: TEMPORARY INJUNCTION. The Constitution provides that elections upon referendum petitions "shall be had at the first regular state election held not less than

thirty days" (Const., art. III, sec. 1D) after the filing of the petition. The Constitution also provides for legislation to facilitate the operation of the referendum amendment and for legislation relating to the submission of petitions. A law was passed permitting mandamus and injunction proceedings, directed against the secretary of state, bringing in question the validity of the referendum petition or the manner of submission. *Held* that, pending an action seeking an injunction to prevent the submission of the proposition to the voters because of insufficiency of the petition, and in which a temporary injunction has issued therefor, the proposition should not be submitted, and that the constitutional provision, fixing the date of the election, is to that extent directory, and not mandatory. *Held,* further, that in such case the election, if not permanently enjoined, should be had at a regular election, and as soon as may be under the law, awaiting the final decision of the court. *Held,* further, that a temporary injunction made by the trial court, enjoining the secretary of state from submitting the proposition until the hearing and adjudication of the case upon its merits, is not a final order appealable to this court, even though it prevents a submission at the first regular election.

Appeal from the district court for Lancaster county: LEONARD C. FLANSBURG, JUDGE. *Appeal dismissed.*

*Jacob Fawcett, John L. Webster, L. F. Crofoot* and *B. G. Burbank,* for appellants.

*Willis E Reed, Attorney General, F. A. Brogan* and *T. J. Doyle, contra.*

CORNISH, J.

This is an appeal from an order of the district court, continuing the hearing of the cause to a date subsequent to general election day, November 5, 1918, and granting a temporary injunction restraining the secretary of state from submitting House Roll No. 222 to the electors of the state on said election day. House Roll No. 222 conferred upon women certain voting privileges, and is subject to the referendum provided for in our Constitution; the requirements relating thereto having been complied with.

A referendum petition had been filed. The plaintiffs brought this action, attacking the petition as invalid and spurious, seeking also an injunction forbidding the secretary of state from submitting the law to a vote of the people at the general election. Issues were framed and a large amount of testimony (not before us) was taken, when the court made the above order, finding, among other things, that the hearing could not be concluded before the general election, and that, in the opinion of the judge, if the petitions were finally adjudged valid, the proposition should be referred to the people at the next succeeding general election.

The first, and, if answered in the negative, the controlling, question for our consideration is whether the order appealed from, continuing the hearing to a time subsequent to November 5 and restraining the secretary of state from submitting the proposition in the meantime to the voters of the state, was a final order. If it was not, then this court has no jurisdiction to entertain the appeal. *Meng v. Coffee,* 52 Neb. 44. It is contended by defendant and interveners that it is a final order, because, in effect, it disposes of the case and finally determines the rights of the parties to the controversy. It is argued that the constitutional provision relating to referendum petitions, which provides that "elections thereon shall be had at the first regular state election held not less than thirty days after such filing," is mandatory, and that therefore such election must be had upon the day named or not at all.

If we admit the premises upon which the argument is based, it is very likely that the conclusion contended for would follow, and that, although, ordinarily, an appeal does not lie from a temporary injunction, it would in this case, inasmuch as the order, by making further proceedings in the case useless, "in effect determines the action and prevents a judgment." Rev. St. 1913, sec. 8176.

Barkley v. Pool.

We are of opinion that the order appealed from is not a final order, and that the effect of it is not a final determination of the rights of the parties to the action. We agree with the rule, stated in 12 C. J. p. 740, sec. 145, as follows: "It is an established general rule that constitutional provisions are to be construed as mandatory, unless, by express provision or by necessary implication, a different intention is manifest."

It is reasonable to suppose that the makers of the Constitution would anticipate that petitions might be presented not in compliance with the requirements of the law—petitions invalid for fraud, and other reasons. They would anticipate that questions would arise which are judicial questions, not proper to be decided by a state official acting only in a ministerial capacity. In the absence of any provision in the Constitution, besides the one above quoted, touching the time of the referendum election, a difficult question might arise, however, as to just when and to what extent the courts might interfere by mandamus or injunction. In this case there are other provisions of the Constitution which need to be considered. Section 1D of the amendment (Const., art. III) contains this language: "This amendment shall be self-executing, but legislation may be enacted especially to facilitate its operation. In submitting petitions and orders for the initiative and the referendum, the secretary of state and all other officers shall be guided by this amendment and the general laws until additional legislation shall be especially provided therefor." The ordering of a referendum suspends the operation of a law until approved by the voters. Section 1C. Following the adoption of the amendment, a law was passed providing that "any citizen" could obtain a writ of mandamus to compel the secretary of state to file a petition if he wrongfully refused to do so; and also providing that, "on a showing that any petition filed is not legally sufficient,"

the secretary of state might be enjoined from submitting the proposition; and further providing: "Any person who is dissatisfied with the ballot title * * * may appeal * * * to the district court." Laws 1913, ch. 159, secs. 5, 6. It is not urged that these laws are invalid. A contention is made that the district court should not have entertained the suit, because of inexcusable delay in bringing it, and because the plaintiffs have not capacity to maintain the action as individuals.

These are questions, however, not relevant to our present inquiry, not proper to be considered until some judgment or order is made which finally determines them. For the purposes of the present discussion we must assume a lawsuit commenced in pursuance of the statutory enactment, without laches, as specially found by the trial judge, and the question is whether the order under consideration, inasmuch as it prevents a submission at the time named in the Constitution, is a final order determining the rights of the parties.

We are of opinion that injunction suits may be maintained, and that the enactment providing for them is constitutional. But, when we have gone this far, have we not already answered the question in dispute? Surely, if a lawsuit may be constitutionally commenced, it may be continued until final judgment. If a permanent injunction may be had, its necessary auxiliary, a temporary injunction, may also be had, and become the law for everybody until dissolved. Nor will it be contemplated that obedience to it can deprive any party of the legal rights that otherwise belong to him. Will the law harbor some opposing principle, in conflict with this rule of justice, which cuts off its processes in the middle of their course? This would be to bring unreason into the law, which is supposed to be harmonious —consistent with itself. The provision of the Constitution permitting this legislation must have the same

sanction and force as has the provision fixing the time of the election. If the position contended for will result in denying to either of the parties a trial of their legal rights in court, that amounts to a *reductio ad absurdum.* These are ancient maxims of the law: "An act of the court shall prejudice no man." "The law does not compel a man to do that which he cannot possibly perform." "That which was originally void does not by lapse of time become valid."

Of course, the rights of the petitioners are as much to be regarded as the rights of those objecting to the petition, but no more. We must avoid a rule under which those attacking a petition could, through the necessary delays of a lawsuit, defeat the rights of the petitioners; and we must also avoid a rule under which the rights of the public and those objecting to the petition may be defeated.

We are of opinion that, if the time required for determining the validity of the petition in court extends to a date beyond that of the next ensuing election, it must be held that, by necessary implication, it was not the intent of the Constitution that either those who petition for a referendum or the objectors to the petition should thereby be defeated of their rights, but that the referendum vote should be had as early as it can be had, awaiting the judgment of the court.

To hold otherwise would be, on the one hand, to hold that the constitutional right of the people to have referred to them a law may be denied them, or, on the other hand, to hold that a referendum petition, which may be spurious and wanting legal validity in every aspect, may effectually suspend the operation of a law which the legislature has passed.

If it be suggested that the vote should be had on the day named, permitting the action to be continued until final adjudication upon the merits, then it might come to pass that the petitioners would be sustained by

an overwhelming vote of the people, and yet the submission of the vote be set aside by a later decision of the court holding that the petition itself or the manner of its submission was insufficient. Constitution makers would never intend that. The Constitution of West Virginia provided: "Every point fairly arising upon the record of the case shall be considered and decided; and the reasons therefor shall be concisely stated." Const., W. Va., art. VIII, sec. 5. In order to prevent this provision from affecting the common-law rule of *res judicata,* it was held to be directory, and not mandatory. *Hall & Smith v. Bank of Virginia,* 15 W. Va. 323. The word "shall" in statutes, as in colloquial speech, is frequently interpreted to mean a direction, rather than a mandate. To the extent above indicated, we hold that the provision in our Constitution is directory, and not mandatory. The provision is, however, mandatory in the sense that a provision would be if it read that the election should be held upon a certain date, unless the legislature should fix another date, or unless, under the operation of laws passed in pursuance of the amendment, an election upon such date becomes impossible.

It is to be said, however, that both the Constitution and the statute contemplate a speedy hearing, to the end that judgment may be had in time for the next ensuing election, and that the courts would be justified in refusing to entertain an action or defense because of laches on the part of either of the parties.

APPEAL DISMISSED.

ROSE, J., dissents.

ALDRICH, J., not sitting.

DEAN, J., dissenting.

The legislature passed an act, House Roll 222, chapter 30, Laws 1917, that amended section 1940, Rev. St. 1913, so that, as amended, the act permitted women to

vote at the regular state election for officers and upon submitted questions, except such officers as are "specified and designated in the Constitution," and except upon questions "the manner of the submission of which is specified and designated in the Constitution of Nebraska." A referendum petition, numerously signed, was filed in the office of the secretary of state on July 23, 1917, to refer the suffrage act to the people for their approval or rejection at the regular state election on November 5, 1918. Plaintiffs began this action February 14, 1918, under section 2339, Rev. St. 1913, to enjoin the secretary of state from placing the act on the ballot, for the alleged reasons appearing in the main opinion. When the case was at issue, a mass of testimony was taken, and on October 18, 1918, a temporary injunction was issued, and interveners appealed.

Ten days before the election, namely, on October 26, 1918, the case was argued and submitted to this court for final determination, and on the same day the appeal was dismissed, as stated in the majority opinion, on two grounds, namely, that the constitutional language in question is merely directory, and because the order was not a final order, and hence was not appealable. It is to these propositions alone that this dissent is directed.

The act proposed to be referred is one of undoubted merit and is in harmony with the progressive spirit of the time. But it need hardly be said that these facts cannot properly enter into this discussion. The only question before us for decision is one of procedure under the terms of the Constitution, and a statute enacted directly in pursuance thereof, and as to whether the language of the organic law under discussion is mandatory or directory merely.

The only importance that now attaches to the present case is with respect to the construction of the constitutional provisions and the statute, both in question here.

Barkley v. Pool.

The record before us, which does not contain any of the testimony, and on which the case was submitted, consists solely of the pleadings and the order or decree of the court. The decree does not on its face purport to be a final judgment, and it is shown that the taking of testimony was not concluded. Under the Constitution and the statute in this class of cases there appears to be no middle ground, but it is the imperative duty of the court to render a final judgment before the election and in apt time to permit an appeal. The party whose laches causes the delay, if any is shown, should be non-suited.

Constitution, art. III, sec. 1B, among other things, provides: "Referendum petitions against measures passed by the legislature shall be filed with the secretary of state * * * and elections thereon shall be had at the first regular state election held not less than thirty days after such filing."

The court is not the master of the organic law, but is an interpreter of that law. Thou shalt! or thou shalt not! This is the imperative language of the law-giver. The language of the Constitution under consideration is severely plain. There does not seem to be room for interpretation, nor mistake as to meaning. The mandate of the people is imperative as to the time when the vote shall be had. If the court has power to read into section 1B language that will postpone the election beyond the "first regular state election" to the "second regular state election," then it has power to read into the same section language that will postpone the vote to any subsequent election; and if the court has power to substitute the directory or permissive "may" for the imperative "shall" in this section, then does it seem to have come to pass that the voice of the people has been radically changed respecting material matter in the fundamental law, and without authority, either express or implied.

Judge Cooley, who has been long recognized as one of our greatest interpreters of constitutional law, lays down this rule: "But the courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a constitution. * * * If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only. * * * There are some cases, however, where the doctrine of directory statutes has been applied to constitutional provisions; but they are so plainly at variance with the weight of authority upon the precise points considered that we feel warranted in saying that the judicial decisions as they now stand do not sanction the application." Cooley, Constitutional Limitations (7th ed.) p. 114. The learned author, at p. 119, cites with approval this language from *People v. Lawrence*, 36 Barb. (N. Y.) 177: "It will be found, upon full consideration, to be difficult to treat any constitutional provision as merely directory and not imperative."

The initiative and referendum is a comparatively new principle of government in this country, and there are not many adjudicated cases bearing on its application to civic affairs. But there is perhaps not a single case where constitutional language respecting the time and manner of its operation has been held other than mandatory. Following is a brief review of recent authorities that seem to support this view.

In *Allen v. State*, 14 Ariz. 458, it is said: "All the qualified voters of the state being authorized to participate in the rejection or approval of referred laws, it may be conceded to be essential that they give expression to their wishes at a time fixed by the fundamental law."

In *Thompson v. Vaughan,* 159 N. W. 65 (192 Mich. 512) it is held: "Every provision of the constitution as to initiative and referendum is mandatory, and requires that every safeguard against irregular and fraudulent exercise be carefully maintained."

*State v. Osborne,* 14 Ariz. 185, in discussing the time for holding elections, says: "That time may be fixed by the people in the sovereign capacity of adopting their constitution; * * * if fixed by the people, the people alone can change it. The legislature cannot do it, and the courts cannot."

*Capito v. Topping,* 65 W. Va. 587, 22 L. R. A. n. s. 1089, is a late case from West Virginia that was decided in 1909 and seems to adhere to the rule. It is there said: "We are aware of no decision authorizing the view that a constitutional clause, dealing with matters so high and vital in character as the executive power of veto, and the making of laws, and having form and terms so emphatic, is merely directory."

In 12 C. J. p. 740, sec. 147, as relating to mandatory constitutional provisions, it is said: "As a general rule, all provisions that designate in express terms the time or manner of doing particular acts and that are silent as to performance in any other manner are mandatory and must be followed."

Section 1D, art. III of the Constitution, being a part of the initiative and referendum amendment, reads in part: "This amendment shall be self-executing, but legislation may be enacted especially to facilitate its operation."

Facilitate: "To make easy or less difficult; to free from difficulty or impediment"—is an accepted definition of a plain word in every day use, with which the legislative branch of government is apparently more nearly in touch than is the judicial branch. Clearly an act that would impede rather than facilitate the operation of the amendment would be unconstitutional.

Legislation in apparent conformity with the language of the Constitution was enacted in 1913 by the first legislature to convene after the adoption of the amendment. Section 2339, Rev. St. 1913, so far as applicable, follows: "On a showing that any petition filed is not legally sufficient, the court may enjoin the secretary of state and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure." So mindful was the legislature of the duty imposed by the Constitution, especially to facilitate the operation of the amendment and to prevent the law's intolerable delays, that it is further provided in the same section that suits brought under the act "shall be advanced on the court docket and heard and decided by the court as quickly as possible. Either party may appeal to the supreme court within ten days after a decision is rendered."

Only mandamus and injunction may be invoked under this statute, and these extraordinary remedies must by the terms of the statute be speedily exercised, so that an aggrieved party may appeal in apt time, and this to the end that the act to be referred may be adopted or rejected at the time named in the Constitution. With respect to an application of this principle of government, neither the Constitution nor the statute contemplates that "the workings of the law shall move with a leaden heel."

It has been suggested that "the first regular state election" means the first election after a referred petition has been held valid by a court decree. But that could not have been the legislative intent, or this language would not have been used: "If it shall be decided by the court that such petition is legally sufficient, the secretary of state shall then file it, with a certified copy of the judgment attached thereto, as of the date on which it was originally offered for filing in his office." Rev. St. 1913, sec. 2339. The legislature did

not presume to attempt an abrogation of the constitutional mandate requiring the vote to be held at "the first regular state election" after the original filing of the referendum petition.

It is apparent that difficulties will be encountered in establishing finally and conclusively under the Constitution and the statute that any election is meant except that of November 5, 1918. It is said in the majority opinion that, if the constitutional language under consideration is mandatory, a referred act must be voted on at the first election, or it never can be lawfully voted on. The statute contemplates that the referendum petition shall designate the date of the election at which submission is sought, and it appears that the election of November 5, 1918, was designated in the present case. By the decision of the majority and on the face of the record it is clear that at least two years must elapse before the legislative act in question can be referred to the people for their adoption or rejection. Will it be said that the Constitution contemplates a situation that is so obviously repugnant to its language? When the people have reserved the right to have laws referred and have fixed the time for such reference, can the legislature or the courts lawfully fix any other time? To do so seems to be usurpation of power. If a mandatory provision of the Constitution may for reasons of expediency be construed to be merely directory, the fundamental law may become meaningless.

It seems that the district court was without jurisdiction to grant a temporary injunction and retain the case for further proceedings after the election in direct violation of the Constitution. It follows that its order was void, and therefore appealable. It is respectfully submitted that the cause should have been remanded, with directions to dissolve the injunction and dismiss the suit.