BERNARD L. STAUFFER, APPELLANT, v. C. L. WEEDLUN, DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES OF THE STATE OF NEBRASKA, ET AL., APPELLEES.

195 N. W. 2d 218

Filed March 10, 1972. No. 38028.

Phillips & Murphy, for appellant.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

The plaintiff, Bernard L. Stauffer, received from the defendant, the Director of the Department of Motor Vehicles of the State of Nebraska, notice under the provisions of section 39-7,130, R. R. S. 1943, of revocation of his license to operate a motor vehicle. The ground of revocation was the accumulation of 12 or more point violations under sections 39-7,128 and 39-7,129, R. R. S. 1943. The notice of revocation was dated December 30, 1970, and contained the information required by section 39-7,130, R. R. S. 1943. On January 7, 1971, plaintiff, pursuant to the provisions of that statute, filed his petition on appeal in the district court for Lancaster County and that court issued a restraining order and stay of revocation which remained in effect until the

hearing on the merits. After the hearing the district court held the revocation valid and reinstated the order of revocation. Plaintiff then perfected his appeal to this court. We affirm.

The evidence in this case tends to show the present livelihood of the plaintiff depends upon his continued ability to use and drive an automobile in the occupation in which he is engaged. There is no evidence in the record to show the plaintiff in fact was required to physically surrender his license or that he, prior to the trial on the merits, suffered any damage on account of the order of revocation.

The principal issue in this case is whether sections 39-7,129 and 39-7,130, R. R. S. 1943, violate the due process clauses of Article I, section 3, Constitution of Nebraska, and the Fourteenth Amendment to the Constitution of the United States. Plaintiff relies upon Bell v. Burson, 402 U. S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90, decided May 24, 1971, in which the Supreme Court of the United States held, insofar as is pertinent here: (1) Suspension of an issued driver's license involves state action that adjudicates important interest of the licensee and such license may not be taken away without procedural due process; (2) procedural due process, in connection with suspension of a driver's license pursuant to *state safety responsibility* law, is satisfied by an inquiry limited to the determination whether there is reasonable possibility of judgment in amounts claimed being rendered against the licensee; and (3) except in emergency situations due process requires that when the state seeks to terminate an interest such as a driver's license it must afford notice and opportunity for hearing appropriate to the nature of the case before termination becomes effective. The court in that case held the motor vehicle safety responsibility law of Georgia was unconstitutional because it did not meet the requirements of notice and opportunity to be heard, and the plaintiff here asserts that sections 39-7,129 and 39-7,130, R. R. S. 1943, are

deficient in these same respects. Section 39-7,129, R. R. S. 1943, provides in part: "Whenever it shall come to the attention of the Director of Motor Vehicles that any person has, as disclosed by the records of such director, accumulated a total of twelve or more points within any period of two years, as set out in section 39-7,128, the director shall summarily revoke . . . the license . . .." Section 39-7,130, R. R. S. 1943, provides that within 24 hours after revocation the Director of the Department of Motor Vehicles shall notify the person of such revocation and this statute prescribes the manner of service and the contents of such notice. This section also provides that if the person fails to surrender the license as directed the Director shall forthwith direct any peace officer or authorized representative of the Director to secure possession of such license.

This court has heretofore in a case involving revocation under the motor vehicle Financial Responsibility Act held because an operator's license was not property and because it was a mere privilege the due process clause of the Constitutions did not apply to proceedings for its revocation. Hadden v. Aitken, 156 Neb. 215, 55 N. W. 2d 620, 35 A. L. R. 2d 1003. Such holding is obviously contrary to Bell v. Burson, *supra*, and to the extent that Aitken holds the due process provisions do not apply to proceedings for revocation of a motor vehicle driver's license under the motor vehicle Financial Responsibility Act that case is overruled.

There still remain however the questions whether (1) due process has been satisfied under the facts in this particular case and (2) whether the holding in Bell v. Burson, *supra,* is applicable to revocation for point violation under the aforementioned sections of the statutes.

Since the decision in Bell v. Burson, *supra*, the Supreme Court of the United States has decided on November 9, 1971, Jennings v. Mahoney, 404 U. S. 25, 92 S. Ct. 180, 30 L. Ed. 2d 146, a case arising under the financial responsibility law of the State of Utah. In

that case the motorist claimed: "Utah's statutory scheme falls short of these requirements in two respects (1) by not requiring a stay of the Director's order pending determination of judicial review, the scheme leaves open the possibility of suspension of licenses without prior hearing; (2) in confining judicial review to whether the Director's determination is supported by the accident reports, and not affording the motorist an opportunity to offer evidence and cross-examine witnesses, the motorist is not afforded a 'meaningful hearing.' " The court stated: "There is plainly a substantial question whether the Utah statutory scheme on its face affords the procedural due process required by Bell v. Burson. This case does not however require that we address that question. The District Court in fact afforded this appellant such procedural due process. That court stayed the Director's suspension order pending completion of judicial review, and conducted a hearing at which appellant was afforded the opportunity to present evidence and cross-examine witnesses." Jennings v. Mahoney, *supra*, applies here. We hold that under the circumstances of this case the plaintiff was in fact afforded due process.

We also choose to place our holding upon an additional ground. A revocation for traffic violations under the point system of our statutes involves a substantially different situation than revocation under the financial responsibility acts. The financial responsibility acts are founded upon the premise the motorist involved in an accident may be at fault. In Bell v. Burson, *supra*, the court held before the driver's license and registration of the motorist could be revoked there must be a determination made at a hearing "appropriate to the nature of the case" that there is a reasonable possibility he is in fact at fault. It is evident that the danger which the court wishes to guard against was an unreasonable possibility of wrongfully depriving the motorist of a valuable entitlement. Under the point sytem of revocation as established by our statutes, is there a reasonable possi-

bility of error and are the procedural safeguards which are inherent in the system such as afford an opportunity to correct before irreparable damage occurs such errors as might happen? The answers to these questions require an examination of the statutory scheme and an analysis of the possible mistakes against which protection should be afforded under procedural due process.

Section 39-7,128, R. R. S. 1943, prescribes the number of points to be assessed against the licensee for each conviction under the various categories of violations. Section 39-7,129, R. R. S. 1943, as already noted, provides for revocation of the license if there is an accumulation of 12 or more points within a 2-year period. Section 39-794, R. R. S. 1943, specifies the duties of the tribunals in which the traffic conviction takes place with reference to entry of judgment in such case and together with section 39-795, R. S. Supp., 1969, requires the forwarding of an abstract of the convictions to the Director of the Department of Motor Vehicles. Such abstracts must be upon a standard form prepared and furnished to the tribunals by the Director as authorized and required in section 39-796, R. S. Supp., 1969. These standard forms as they were used in this case are in the record. These set forth the date of the violation; the date of hearing; the name and address of the motorist; his date of birth; his operator's license number; the vehicle number; the docket and page number of the proceedings in the court; the judgment of conviction including fine and costs; the plea; a description of the offense; the name of the enforcing agency and the officer's name; the date of any appeal from the judgment or the date the appeal was dismissed if that is the case; and a form of certificate for the judge, clerk, or magistrate to sign.

Every motorist is of course charged with notice of the contents of the statutes specifying the points assessed for the various violations. For every offense he has or is afforded an opportunity for hearing. He therefore is charged by law with knowledge that his license is in

jeopardy and at all times is charged by law with notice of the state of his record as it pertains to the points charged against him.

In the foregoing setting, what are the facts with reference to which error might be made? They would seem to be these: (1) Improper determination of the number of points assessed for a given conviction; (2) incorrectly determining the 2-year period; (3) incorrect addition of the points; and (4) misidentification of the motorist. The information required to be set forth in the abstracts of conviction is entirely adequate to readily determine the matters required. These determinations in the system outlined are simple ministerial matters and are so characterized by the statute, section 39-796, R. S. Supp., 1969, and by this court. Bradford v. Ress, 167 Neb. 338, 93 N. W. 2d 17. This characterization is more than a mere euphemism. They truly seem to be merely ministerial. While error might occur in one or more of these items, the likelihood certainly is not very great. There is of course in the system no latitude for discretion nor does it require any factual determinations in the judicial, quasi-judicial, or administrative law sense. There are no inferences to be drawn.

We eliminate from consideration, of course, such matters as completely void judgments as would be the case of no process being served upon the motorist and no appearance by him. We also eliminate such things as fraudulent records of conviction or fraudulent abstracts. We are not required to assume on the appeal that any agency of government will indulge in such practices. Cf. Bourjois, Inc. v. Chapman, 301 U. S. 183, 57 S. Ct. 691, 81 L. Ed. 1027.

If errors do occur, or if there should be fraud, or an absolutely void judgment, what remedy is afforded? Section 39-7,130, R. R. S. 1943, provides for an appeal from an order of revocation to the district court and authorizes the judge to stay the order of revocation pending the appeal. This court has also held that the

procedures authorized by section 60-420, R. R. S. 1943, are available. Durfee v. Ress, 163 Neb. 768, 81 N. W. 2d 148. Both procedures contemplate a full evidentiary hearing. Under the statutes no fact finding of the Director is binding on the courts. In this context is due process lacking under sections 39-7,129 and 39-7,130, R. R. S. 1943? We believe not.

We think that in a very real sense the essential facts have been determined in the judicial proceedings in connection with each conviction. In a very real sense the Director acts only ministerially. The result—the revocation—flows from the operation of the statute upon the already judicially determined facts, that is, the series of convictions of traffic offenses. Of these the motorist already has knowledge. Of their effect point-wise he is charged by law with knowledge just as with any other case of knowledge of the law. These circumstances do, in our opinion, make the procedures applicable to revocation of a driver's license for an accumulation of points for traffic offense conviction clearly distinguishable from revocation under the financial responsibility law as in Bell v. Burson, *supra*. The financial responsibility statutes in effect create without any hearing a presumption of fault. This, if we understand the footing of Bell v. Burson, *supra,* is their constitutional deficiency. Such a situation does not exist in the case here involved. We hold that under the statutory scheme of Nebraska no notice and hearing were required before the issuance of the order of revocation.

The Supreme Court of the United States, in Goldberg v. Kelly, 397 U. S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287, has recently said: "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' Joint Anti-Facist Refugee Committee v. McGrath, 341 U. S. 123, 168 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental

interest in summary adjudication. Accordingly, as we said in Cafeteria & Restaurant Workers Union v. McElroy, 367 U. S. 886, 895 (1961), 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' See also Hannah v. Larche, 363 U. S. 420, 440, 442 (1960). . . . It is true, of course, that some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing." See cases cited in note 10, p. 263. That court has long recognized that the requirements of due process may vary according to the nature of the interest to be protected and the likelihood of harm to the individual. In Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306, 315, 70 S. Ct. 652, 94 L. Ed. 865, the court, quoting from another case, said: " 'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' " See, also, 16A C. J. S., Constitutional Law, § 628b, p. 856. The due process of law provisions do not prevent an administrative agency in every case from issuing an order affecting the private rights of an individual without formal notice and hearing before such order. The due process requirements may under some circumstances be satisfied if full hearing in the courts is available after the administrative order with judicial power to stay irreparable injury pending court hearing. Parker v. Board of Barber Examiners (La. App.), 84 So. 2d 80.

"Apart from statute, the necessity of notice and hearing in an administrative proceeding depends on the character of the proceeding and the circumstances of the case; insofar as generalization is possible, it may be stated as a general rule that notice and hearing are required where an administrative body acts in a quasi-judicial

manner but not where its actions are executive, administrative, or legislative." 73 C. J. S., Public Administrative Bodies and Procedures, § 130, p. 452.

Under the Nebraska scheme the Director acts ministerially. The likelihood of error is small. The compelling public interest in removing from the highways those drivers whose records demonstrate unsafe driving habits outweighs the need for notice and hearing prior to the order to protect the individual against mistake. In this connection the matter must be viewed not as an isolated case but in the collective aspect, that is, the removal of many such drivers from the highways.

Cases such as Francisco v. Board of Dental Examiners (Tex. Civ. App.), 149 S. W. 2d 619, where summary revocation of a dental license followed upon a conviction of a felony involving moral turpitude, are distinguishable upon at least two grounds. First, in the cited case there was the question of whether the felony involved moral turpitude and this requires a separate determination or judgment apart from the conviction itself, and second, the conviction in that case would not have any necessary and immediate relationship to the competence of the individual to practice dentistry hence no direct immediate relationship to the public health. On the other hand, in our case the Legislature has determined, and we believe reasonably so, that a habit of repeated traffic violations has a definite relationship to the fitness of the driver to operate a motor vehicle and hence to the compelling public interest in safety on the highways.

If a ministerial error has occurred or if there is a fraudulent abstract a notice of revocation is void and this may be determined on the appeal. There is in fact no final "taking" until the court review has occurred or the motorist has acquiesced by failing to take an appeal. The following we think is pertinent. Forkosch, Constitutional Law (2d Ed.), § 191, p. 208, says: "The concept of procedural due process, as we have seen, gives to every person the constitutional right to notice and

hearing before his life, liberty or property is finally taken. To this point we have assumed that the agency, in its proceedings, is 'taking' because its findings of fact are binding upon the judiciary when reviewed. Regardless of this finality, and even if it is or is not present a person is entitled only to one fair hearing (adequate notice is assumed) at some point before a final taking. This fair hearing may or may not be in an agency proceeding, as there may be a court or judicial one instead or in addition. Obviously this latter proceeding accords with procedural due process; if the former, then the question is whether procedural due process was given therein. We are not here concerned with substantive rights * * *, so that if all of the required procedural rights are obtained either in the agency, or in the courts on review, or in a combination of both, before a final taking occurs, then no procedural violation has occurred."

The Court of Appeals of Kentucky, in Commonwealth, Dept. of Public Safety v. Thomas (Ky. App.), 467 S. W. 2d 335, may have come to a different conclusion than have we as to the scope of Bell v. Burson, *supra,* for it has applied the principles of that case to void that State's "point" statute because of lack of provision for prerevocation hearing. There are, however, some significant differences between our and the Kentucky statute. There the administrative agency was entrusted with discretion both as to whether the license should be suspended upon conviction and also as to the period of suspension. The details of the statutory scheme are not set forth. We think, however, that the element of discretion is sufficient to clearly distinguish the case. If discretion is to be exercised, it must be based upon some factual basis if it is not to be purely arbitrary and this would of course require notice and hearing.

Affirmed.