STATE OF NEBRASKA EX REL. BERNICE LABEDZ, JOHN DECAMP, AND WALTER H. RADCLIFFE, APPELLANTS, V. ALLEN J. BEERMANN, SECRETARY OF STATE, STATE OF NEBRASKA, APPELLEE.

428 N.W.2d 608

Filed September 2, 1988.    No. 86-812.

Timothy J. McReynolds, of Croker, Huck & McReynolds, Thomas J. Guilfoyle, of Frost, Meyers, Guilfoyle & Westover, and Alan E. Peterson, David R. Buntain, and Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, for apellants.

Robert M. Spire, Attorney General, and Sharon M. Lindgren for appellee.

BOSLAUGH, WHITE, CAPORALE, GRANT, and FAHRNBRUCH, JJ., and RIST, D.J., and COLWELL, D.J., Retired.

PER CURIAM.

The relators-appellants, State Senator Bernice Labedz, then State Senator John DeCamp, and one Walter H. Radcliffe, instituted this mandamus action to compel the defendant-appellee, Secretary of State Allen J. Beermann, to place on the 1986 general election ballot an initiative measure

which would amend the Constitution of this state so as to permit a state-run lottery. The district court dismissed the petition, and the relators have appealed to this court, assigning seven errors. These assignments may be summarized as asserting the district court erred in (1) finding relators did not file this action within the required period of time, (2) not declaring that the failure of Neb. Rev. Stat. § 32-706 (Reissue 1984) to require notice of the secretary's determination not to place the measure on the ballot violates the federal Constitution, and (3) not declaring other portions of the legislative scheme implementing the initiative process violative of the federal and state Constitutions. For the reasons discussed hereinafter, we affirm.

Senator Labedz, then Senator DeCamp, and another then member of the Nebraska Legislature formed a private unincorporated association, the Nebraska Taxpayers Lottery Committee—1986, for the purpose of promoting the constitutional amendment described earlier and circulating petitions to initiate its adoption, and elected Senator Labedz as chairwoman of the group. On "[t]he 3rd day of July, 1986, a few minutes before 5:00 . . . [t]he petition sponsors and organizers delivered to [the secretary's] office boxes containing signatures on petitions," and the secretary thereupon initiated the process of inventorying and sorting the proffered petition pages by county, distributing these among the various county election officials, receiving from the county officials tabulations of verified valid signatures, and from these determining whether the petition drive had been successful in gathering the requisite number of valid signatures to place the initiative measure on the November 1986 general election ballot. During this period, relators monitored the secretary's progress in verifying signatures. The secretary testified he had a number of inquiries from Radcliffe throughout the last half of July concerning the count and the reasons for rejecting certain signatures.

On August 13, 1986, having determined that the lottery initiative petition drive had failed for want of sufficient valid signatures, the secretary began drafting an order declining to place the measure on the November 1986 ballot. On August 14,

1986, he sent unsigned and undated copies of this order, marked "Not For Release," to the relators' offices. In this document the secretary stated that the lottery initiative petition drive had fallen some 13,000 signatures short and that he must therefore decline to place the measure on the November ballot. In addition, the offices of Senator Labedz, then Senator DeCamp, and 30 news media representatives were informed by telephone of a press conference to be held the following day to announce the fact that the initiative petition drive had failed.

The following day, on August 15, 1986, the secretary conducted a press conference attended by representatives of the electronic and print news media, at which he publicly announced that the lottery initiative petition drive had failed. At that time, he formally signed his order declining to place the initiative matter on the November 1986 general election ballot, and filed that order for public record. Relators commenced this suit on September 5, 1986.

Inasmuch as the general election of November 1986 is long past, it may well be suggested that this case is now moot, particularly in light of Neb. Rev. Stat. § 32-703.01 (Reissue 1984), which provides as follows:

> When a copy of the form of any initiative petition is filed with the Secretary of State prior to the obtaining of signatures, as required by section 32-704, the issue presented by such petitions shall be placed before the voters at the next ensuing general election occurring not less than four months after the date that such copy is filed, if the petitions are found to be valid and sufficient. All such petitions shall become invalid on the date of the first general election occurring not less than four months after the date on which a copy of the form is filed with the Secretary of State.

The last sentence of the foregoing statute may suggest that the petitions at issue are now invalid due to the mere passage of time. We do not so read the statute.

The first sentence of this statute provides that the "issue presented by [the] petitions shall be placed before the voters at the next ensuing general election . . . *if the petitions are found to be valid and sufficient.*" (Emphasis supplied.) In this case the

validity of these petitions has yet to be finally determined. Until such disposition, the issue obviously cannot go before the voters.

Section 32-706, concerning which more will be written later, clearly provides proponents or opponents of an initiative or referendum a cause of action in the courts for mandamus or injunctive relief should they be dissatisfied with the secretary's decision regarding the validity of a petition. Thus, it must be concluded that the Legislature did not intend that the mere passage of time occasioned by judicial review of the secretary's sufficiency determination would automatically defeat an initiative effort.

In *Barkley v. Pool*, 102 Neb. 799, 169 N.W. 730 (1918), this court considered, in the context of a referendum, the very concern which now arises in the context of an initiative. In *Barkley*, the Legislature had submitted to a referendum vote of the people certain proposed legislation dealing with women's suffrage. Antisuffrage forces had sought an injunction to prevent the secretary from placing the referendum on the ballot of the next statewide election. The district court had commenced a hearing but, seeing that this could not be concluded in time, issued an order continuing the hearing until after the November 5 election date. The secretary attempted to appeal from the order, arguing that it was, in these circumstances, final because

> the constitutional provision relating to referendum petitions, which provides that "elections thereon shall be had at the first regular state election held not less than thirty days after such filing," is mandatory, and that therefore such election must be had upon the day named or not at all.

*Id.* at 801, 169 N.W. at 731. The *Barkley* court, noting that the Legislature had provided for injunctive suits and mandamus actions in the courts to challenge the secretary's determination, reasoned,

> if the time required for determining the validity of the petition in court extends to a date beyond that of the next ensuing election, it must be held that, by necessary implication, it was not the intent of the Constitution that

either those who petition for a referendum or the objectors to the petition should thereby be defeated of their rights, but that the referendum vote should be had as early as it can be had, awaiting the judgment of the court.

*Id.* at 804, 169 N.W. at 732. Similarly, this court will not construe § 32-703.01 in a way which would defeat relators' right seasonably to present their objections for judicial review.

Having determined that this appeal is not moot, we proceed to consider whether relators' suit in the district court is barred by § 32-706, which provides in relevant part:

If the Secretary of State shall refuse to accept and file any initiative petition presented not less than four months preceding the date of the election at which the proposed law or constitutional amendment is to be voted upon . . . any citizen may apply, within ten days after such refusal, to the district court of Lancaster County for a writ of mandamus. If it shall be decided by the court that such petition is legally sufficient, the Secretary of State shall then file it, with a certified copy of the judgment attached thereto, as of the date on which it was originally offered for filing in his office. . . . All such suits shall be advanced on the court docket and heard and decided by the court as quickly as possible. Either party may appeal to the Supreme Court within ten days after a decision is rendered. The district court of Lancaster County shall have jurisdiction of all litigation arising under the provisions of sections 32-702 to 32-713.

Under § 32-706, relators, and, we might add, all citizens of Nebraska, had 10 days from the day the secretary formally filed his order refusing to place the lottery initiative on the ballot to bring suit in the district court for Lancaster County contesting that order. Relators' suit was filed 21 days after the secretary's order was filed and was, therefore, 11 days too late under § 32-706, as the district court held.

Relators' objection to this conclusion is essentially two-pronged: on the one hand, relators argue that § 32-706 is unconstitutional, void, and therefore no bar to their suit; on the other hand, relators argue that, if constitutional, § 32-706 does not apply to this case.

Regarding the constitutionality of § 32-706, relators first argue that the statute does not require the secretary to notify persons in the relators' position of his determination of the sufficiency of an initiative petition drive and that the statute is therefore facially unconstitutional under the due process clause of the 14th amendment and the free speech clause of the 1st amendment to the U.S. Constitution. Relators aver that they may advance this argument notwithstanding the conclusion fairly to be drawn upon the present record that the relators had timely actual notice of the secretary's determination.

Relators' argument misses the mark for two principal reasons: the determination by the secretary of the sufficiency of the number of signatures collected in an initiative petition drive is not the sort of proceeding to which the due process concept of "notice" applies, and even assuming, contrary to the clear import of the record, that relators had no actual notice of the secretary's determination, they were clearly on inquiry notice of this determination. We shall explore these twin notions in turn.

As this court observed in, among other cases, *McAllister v. McAllister*, 228 Neb. 314, 422 N.W.2d 345 (1988), and *Hill v. Gerber*, 217 Neb. 670, 350 N.W.2d 545 (1984), an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. In this context, "notice" means apprisement *of the pendency of an action* which is reasonably calculated in the circumstances to give interested parties an opportunity to be heard therein. See, e.g., *F.P.P. Enterprises v. U.S.*, 830 F.2d 114 (8th Cir. 1987) (amended notice of appeal naming an additional party plaintiff, filed after argument of the case and interrogation by the court, was untimely); *Hroch v. City of Omaha*, 226 Neb. 589, 413 N.W.2d 287 (1987) (the requirements of the due process clause are satisfied if the citizen has reasonable notice and a reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceedings and the character of the rights which may be affected by them); *Black v. Black*, 223 Neb. 203, 388 N.W.2d 815 (1986) (constitutional due process requires notice

which advises one of the matters to be considered and which is fair in view of the circumstances and conditions existent at the time); *Benton v. Board of Ed. of Sch. Dist. No. 17*, 219 Neb. 134, 361 N.W.2d 515 (1985) (constitutional due process requires notice which relates to the matter to be presented and which is suitable and fair in view of the circumstances and conditions existent at the time).

In the present case relators cannot be without apprisement of the pendency of a determination, for there was nothing pending which the relators did not themselves initiate and of which they therefore necessarily had notice. The secretary cannot determine whether an initiative petition contains the proper number of valid signatures unless first requested to do so by persons in the position of relators, who did in fact make such a request in the present case.

Furthermore, granting that relators have a first amendment interest in the initiative petition process and in the outcome of their petition drive in particular, *Meyer v. Grant*, _____ U.S. _____, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988), and *State v. Radcliffe*, 228 Neb. 868, 424 N.W.2d 608 (1988), it is clear that the secretary's determination of the sufficiency of the number of signatures collected on an initiative petition is administrative in nature, a ministerial act, and not judicial, and that, therefore, a statute such as § 32-706 which does not contain an explicit notice requirement is not, solely for its absence, unconstitutional.

An adjudicative proceeding is one in the course of which a deliberative entity hears evidence based upon which it will determine the rights of the individuals before it. See, e.g., *Van Fossen v. Board of Governors*, 228 Neb. 579, 423 N.W.2d 458 (1988); *Richardson v. Board of Education*, 206 Neb. 18, 290 N.W.2d 803 (1980). By contrast, the secretary's duties and responsibilities, and those of the county election officials, are ministerial in nature, insofar as these persons do not hear evidence in the course of validating petition signatures but, rather, rely upon their own records in reaching their determinations of validity. See *State ex rel. Brant v. Beermann*, 217 Neb. 632, 350 N.W.2d 18 (1984), in which this court suggested that the secretary acts in a ministerial capacity when

determining the sufficiency of the number of signatures collected on an initiative petition.

In *Barnett v. Boyle*, 197 Neb. 677, 678-79, 250 N.W.2d 635, 636-37 (1977), the facts were, briefly, as follows:

Prior to 1975, the members of the board of education of the Omaha School District were elected at large by the electors residing in the district. . . .

L.B. 423, the 1975 amendments to section 79-1003, R.R.S. 1943, provided the school district should be divided into twelve numbered districts "of compact and contiguous territory and of as nearly equal population as may be practical" by the election commissioner of the county in which the greater part of such district was situated. The defendant Boyle divided the district in accordance with the requirements of the statute . . . .

The plaintiffs contend that the absence of any provision in the statute for notice and hearing prior to the division of the school district into districts for the election of board members made L.B. 423 invalid.

This court reasoned that the division of the school district into districts for the election of board members was essentially a ministerial act, legislative in nature rather than quasi-judicial, and concluded that the law was not unconstitutional.

In *Stauffer v. Weedlun*, 188 Neb. 105, 195 N.W.2d 218 (1972), after acknowledging that revocation of a license to operate a motor vehicle implicates interests subject to due process requirements, this court reaffirmed its determination that revocation of such a license for point violations is a ministerial act, as "[t]here is of course in the system no latitude for discretion nor does it require any factual determinations in the judicial, quasi-judicial, or administrative law sense. There are no inferences to be drawn." *Id.* at 111, 195 N.W.2d at 223. Furthermore, in *Stauffer*, this court quoted with approval the U.S. Supreme Court's language in *Jennings v. Mahoney*, 404 U.S. 25, 92 S. Ct. 180, 30 L. Ed. 2d 146 (1971), to the effect that

"[t]here is plainly a substantial question whether the Utah statutory scheme on its face affords the procedural due process required by Bell v. Burson [402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971)]. This case does not however

require that we address that question. The District Court in fact afforded this appellant such procedural due process. . . ."

*Stauffer* at 109, 195 N.W.2d at 222. Clearly, § 32-706 is not unconstitutional merely for the absence therein of a notice requirement.

Moreover, we note that were this court to conclude that the secretary's determination of the sufficiency of signatures on an initiative petition involves judicial rather than ministerial action, we would be forced to bar relators the recovery they seek for that very reason, for mandamus lies only to enforce performance of a ministerial act or duty, and not to control judicial discretion. *State ex rel. Wright v. Pepperl*, 221 Neb. 664, 380 N.W.2d 259 (1986).

As their next specification of unconstitutionality, relators argue that § 32-706 is a statute of limitations and, as such, sets too short a time limit, denying relators their constitutional right to due process of law.

As this court observed half a century ago, in *Markel v. Glassmeyer*, 137 Neb. 243, 245-46, 288 N.W. 821, 822-23 (1939):

The essential attribute of a statute of limitations is that it accords and limits a reasonable time within which a suit may be brought upon causes of action which it affects. Limitations are created by statute and derive their authority therefrom. They evidence a public policy formally declared by the legislative department of government; and as applied to each classification made by it are based upon the similarity of the intrinsic or inherent elements which the causes of action so classified comprise, considered with reference to the nature of proof required to establish the existence of the same.

So considered, the adopted policy of this state has announced a limitation of "within ten days after such refusal" for an appeal to the district court for Lancaster County from the secretary's refusal "to accept and file any initiative petition presented not less than four months preceding the date of the election at which the proposed law or constitutional amendment is to be voted upon." § 32-706.

In construing Neb. Rev. Stat. § 79-403(1) (Cum. Supp. 1984), this court observed that "[a]bsent some violation of due process, the Legislature may prescribe the time in which an appeal must be taken, even if the procedure, on careful reflection, is foolish or contrary to other procedures provided." *In re Covault Freeholder Petition*, 218 Neb. 763, 767, 359 N.W.2d 349, 353 (1984). Although certainly short, the Legislature's specification of a 10-day limitation in § 32-706 seems, upon reflection, neither foolish nor contrary to other procedures provided, for, as the secretary explained, the preparation of the general election ballot is a complicated, time-consuming process involving the secretary, county election officials, the Attorney General, the Governor's office, and many printers across the state, a process for which the law must allow ample time. It is this legislative policy which the time limit set in § 32-706 appropriately serves.

Finally, in this regard, we note that relators repeatedly asserted in the court below that "the first time that the petitioner even learned that somebody had allegedly signed that [order refusing to place the initiative on the November 1986 ballot] was on September 5th, the morning that the petition [in district court] was filed." Having demonstrated that suit could be commenced within a day of the secretary's order, relators cannot seriously contend that a period of 10 days is too short a time within which to act.

For their final assertion of unconstitutionality, relators argue, in essence, that § 32-706 is unconstitutional in its application to them in the present case because they were without actual notice of the secretary's determination that their initiative petition drive had fallen some 13,000 signatures short. Assuming for purposes of this discussion, contrary to the clear import of the record, that relators were without actual notice, relators' argument must fail for the reason that knowing of the pendency of the determination which they had initiated, they were on inquiry and therefore had inquiry notice of the secretary's determination.

As this court observed in *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985), citing *Baxter v. National Mtg. Loan Co.*, 128 Neb. 537, 259 N.W. 630 (1935), whatever fairly puts a

person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he or she omits to inquire, he or she is then chargeable with all the facts which, by a proper inquiry, one might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent person to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts. Clearly, the relators, and parenthetically any other Nebraska citizen so inclined, knowing that the question of the total number of valid signatures collected had been submitted to the secretary, had the responsibility to periodically apprise themselves of the secretary's progress in reaching a determination of that question. If they did in fact fail to do this, the fault was theirs, not the law's.

Having determined that § 32-706 is not unconstitutional on its face nor unconstitutional in its application to relators in the present case, we turn to relators' final argument, that the limitation provision of the statute

applies only to situations in which the Secretary of State refuses to accept the petitions for filing because of a failure to comply with statutory requirements or a defect apparent on the face of the petition. . . . The ten day limitations [sic] has no application once the Secretary has accepted the petitions and has begun the signature verification process as was done in this case.

Brief for appellants at 13-14. Rather, relators urge the application of "the normal four year statute of limitations." Reply brief for appellants at 3.

It is clear, as relators point out, that the secretary may determine, before circulation, that a proffered initiative petition is deficient because of the lack of ancillary filings or for some reason of form, and may decline to allow circulation of the petition for that reason. *State, ex rel. Winter, v. Swanson,* 138 Neb. 597, 294 N.W. 200 (1940). In such a case § 32-706 clearly applies, as relators contend. *Swanson, supra.* It is equally clear, however, that the secretary may determine, after circulation, that a proffered initiative petition is deficient for reason of having obtained an insufficient number of valid signatures, and may decline to allow the proffered initiative

measure on the ballot for that reason. Neb. Const. art. III, § 2 (*"[W]hen thus signed* the petition shall be filed with the Secretary . . . who shall submit the measure thus proposed to the electors of the state . . ."* (emphasis supplied)); Neb. Rev. Stat. § 32-704 (Reissue 1984). Section 32-704 provides in part:

> Upon the presentation of such petition for filing, the Secretary of State, with the aid and assistance of the county clerks or the election commissioners, shall determine its validity and sufficiency. To determine the validity and sufficiency of signatures on the pages of the filed petition, the Secretary of State shall have the authority to deliver the various pages of such filed petition to the county clerk or election commissioner, for the county stated on each page of the petition.

See, generally, *State ex rel. Morris v. Marsh*, 183 Neb. 502, 162 N.W.2d 262 (1968).

Relators would have this court distinguish the secretary's precirculation determinations from his postcirculation determinations, applying § 32-706 to the former but not to the latter. Section 32-706, however, contains no such distinction, granting recourse in the district court to any citizen of Nebraska "[i]f the Secretary of State shall refuse to accept and file any initiative petition" for whatever reason at whatever point in the process.

This court considered a related question, the correct statutory source of the time limitation on appeals from the district court to this court of decisions regarding sufficiency of an initiative petition, in *State, ex rel. Ayres, v. Amsberry*, 104 Neb. 279, 284, 178 N.W. 822, 824-25 (1920):

> That the legislature, by this act relating to the initiative and referendum, intended to prescribe a complete method of putting into practical effect the constitutional provision relating to the initiative and referendum, there can be no reasonable doubt. The language is clear and unambiguous. The act sets forth in detail the necessary steps to be taken to carry out its provisions. It provides that, if the secretary of state shall refuse to accept or file the petition, "any citizen may apply, within 10 days after such refusal, to the district court for a writ of mandamus;

> * * * that the district court of Lancaster county shall have jurisdiction of all litigation arising under the provisions of this act;" that such suits shall be advanced on the court docket and decided by the court as quickly as possible; and that "either party may appeal to the supreme court within 10 days after a decision is rendered." By this act ample provision is made for the protection of the citizen in every constitutional right, and if, as in this case, he has not complied with the terms of the law, the fault is his, and not of the law.

Thus, the district court may acquire jurisdiction only if an appeal is taken in the mode and manner and within the time provided by statute. If the statutory requirements are not met, the district court acquires no jurisdiction and may not enter any order other than an order of dismissal. *Gilmore v. Nebraska Crime Vict. Rep. Bd.*, 225 Neb. 640, 407 N.W.2d 736 (1987); *McCorison v. City of Lincoln*, 218 Neb. 827, 359 N.W.2d 775 (1984).

The time limit imposed by § 32-706 violates neither the 1st nor 14th amendments to the U.S. Constitution on its face nor as applied to relators in this case, and was properly applied to the facts of this case.

The foregoing analysis answers the issues presented by the first two assignments of error. The issues presented by the third assignment of error relate to various other portions of the legislative scheme implementing the initiative process and are not properly before us, for they are not germane to the question of whether this action is time-barred. This court will not pass upon the constitutionality of legislation absent a need to do so in order to properly dispose of an action. *State v. Radcliffe*, 228 Neb. 868, 424 N.W.2d 608 (1988).

The order of the district court dismissing relators' suit is correct and is therefore affirmed.

AFFIRMED.

WHITE, J., dissenting.

"The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature." Neb. Const. art. III, § 2.

"The provisions with respect to the initiative and referendum shall be self-executing, but legislation may be enacted to facilitate their operation." Neb. Const. art. III, § 4.

As the majority concludes, the right of initiative once reserved in a state constitution assumes the status of a right protected by the first amendment to the Constitution of the United States.

As to the state constitutional question, does the 10-day restriction "facilitate" the operation of the initiative process? Only, I suggest, if necessary, and if one can discount the absence of any requirement of notice of the critical decision of the Secretary of State not to allow the filing of the initiative petitions and thus to deny the "electors of the state" the opportunity to vote on the issue presented. Neb. Const. art. III, § 2.

The majority suggests in circular fashion that since mandamus is the prescribed remedy to raise the propriety of the refusal to place the initiative petition on the ballot, Neb. Rev. Stat. § 32-706 (Reissue 1984), and since mandamus generally lies only to compel ministerial acts, the actions of the Secretary of State must therefore be ministerial, and thus being ministerial, no notice is constitutionally required. The simple fact is that the Legislature prescribed mandamus as the remedy, and this directive is not determinative of whether the action is ministerial or not, is simply irrelevant, and, in any event, is probably wrong.

To describe the action of the Secretary of State as ministerial and as mere counting of signatures ignores completely the actions of his surrogates, the 93 election commissioners. "The county clerk or election commissioner shall . . . compare each signature of the electors signing and the circulator . . . to determine if the signers and circulator were . . . duly qualified, registered voters." Neb. Rev. Stat. § 32-704 (Reissue 1984). The multiple judgments made by the commissioners as to similarity of signed names as against registered names and variances in addresses are obvious. The findings of the commissioners constitute the findings of the Secretary of State. The actions are at least quasi-judicial in nature. In my judgment, the failure to provide for notice of quasi-judicial acts, together with the extremely short limitation period, may impede the initiative

process and is therefore unconstitutional as violative of Neb. Const. art. III, § 2.

I agree that the mere passage of a general election date while the validity of the initiative petitions is being challenged does not void the petitions but merely postpones their consideration to the next general election date after the petitions have been determined valid. In view of this holding, what rational basis exists for the 10-day limitation to challenge the Secretary of State's refusal to file the petition? The answer is none.

Whether an artificially and unnecessarily short limitation period, coupled with a complete lack of a requirement of notice of such action, would pass the strict scrutiny standard required in first amendment cases under the U.S. Constitution is extremely doubtful. In my judgment it does not, and I therefore dissent.

RIST, D.J., joins in this dissent.