HENRY LINENBRINK, APPELLEE, v. CHICAGO AND NORTH WESTERN RAILWAY COMPANY, APPELLANT.

131 N. W. 2d 417

Filed November 20, 1964. No. 35745.

Gaines, Spittler, Neely, Otis & Moore and Richard L. Spittler, for appellant.

Quigley & Quigley, William S. Dill, and Healey, Healey & Goth, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and ROBERT L. FLORY and ROBERT L. SMITH, District Judges.

CARTER, J.

This is an action to recover the value of two bulls which were killed by defendant's train on or about September 16, 1961. The trial court sustained plaintiff's motion for a summary judgment and entered judgment for plaintiff in the amount of $1,190 with interest and costs. The defendant has appealed.

The essential facts are stipulated as follows: The two bulls were of the value of $1,190 on the day they were killed. The defendant did not have its railroad right-of-way fenced and in a proper state of repair as a result of which the bulls came on the railroad right-of-way and were struck and killed by defendant's train.

The only question raised by the appeal is the constitutionality of sections 74-601 to 74-604, R. R. S. 1943, imposing duties and obligations upon railroad companies for failure to construct and maintain fences on railroad right-of-ways as provided by such statutes. The defendant contends that such statutes are violative of the Fourteenth Amendment to the Constitution of the United States and of Article I, sections 1, 3, and 25, Constitution of Nebraska. These provisions provide for equal rights to all persons, due process of law, and the forbidding of discrimination between citizens in respect to the ownership and enjoyment of property.

Sections 74-601 to 74-604, R. R. S. 1943, were first enacted in 1867 and no amendments of controlling im-

port have been enacted up to the present time. These statutes provide in substance that every railroad corporation shall erect and maintain fences on the sides of its railroad suitable and sufficient to prevent cattle from getting on such railroad, except at crossings of public roads and within the limits of towns, cities, and villages. For failure to so fence its railroad against livestock running at large, the railroad company shall be absolutely liable to the owner of any livestock injured, killed, or destroyed by its agents, employees, or engines.

In the case of Middaugh v. Chicago & N. W. Ry. Co., 114 Neb. 438, 208 N. W. 139, this court in 1926 passed upon this precise question, stating: "A statute which requires a railroad company to erect and maintain fences along the sides of its right of way, and fixes a liability upon it for damages occasioned by its failure to comply with the statute, does not deprive such company of its property without due process of law, or deny it the equal protection of the law, so as to violate the Constitution of Nebraska (Art. I, sections 1, 3), or the Fourteenth Amendment to the Constitution of the United States, (citing cases)."

It is the contention of the defendant that, although the statutes in question were constitutional in 1926, they have become unconstitutional because of changed conditions. We do not question the validity of the assertion that a law once held to be constitutional may subsequently become unconstitutional because of changed conditions; and that it may become unconstitutional because of additions to a class once held to be a class sufficient to support legislation as to it when such classification might be discriminatory as to others who subsequently enter the class, or where the reason for the classification no longer exists because of subsequent changed conditions, or where the statute becomes confiscatory because of changed conditions. Hubbell Bank v. Bryan, 124 Neb. 51, 245 N. W. 20; Nashville, Chattanooga & St. Louis Ry. Co. v. Walters, 294 U. S. 405,

55 S. Ct. 486, 79 L. Ed. 949. The question here presented is whether the conditions have so changed as to require a present holding of unconstitutionality.

The defendant relies in substance on the following changed conditions: Freight and passenger traffic in a very substantial amount has been lost by the railroads in recent years to new forms of transportation such as passenger buses, trucks, and airlines. The miles of railroads maintained and the number of trains operating have been materially reduced. Truck and bus lines use the public highways and are not burdened with the construction and maintenance of fences or an absolute liability such as that imposed on railroads for noncompliance with the fencing laws.

The plaintiff points up the following distinguishing factors in his brief: The railroads were the beneficiaries of grants of public lands. They were granted the right of eminent domain which enabled them to cross public roads at random and to cross pasture lands where they chose. They own the right-of-way over which their trains operate. They pass through range lands where they choose to go without consideration of the convenience of the landowner. There is no showing that Nebraska is any less a cattle state now than it was in 1926, or that the purposes of the legislation are any less important now than then.

It is the contention of the defendant that passenger buses, trucks, and airlines are new forms of transportation of the same class as railroads and that no reasonable basis now exists for legislation applicable to railroads and not to passenger buses, trucks, and airlines. It is true that all are common carriers subject to regulation in the public interest.

There are distinguishing factors that warrant differences in legislation between railroads and passenger buses and truck lines. Fort Worth & D. C. Ry. Co. v. Welch (Tex. Civ. App.), 183 S. W. 2d 730. Trains travel at high speeds on a fixed route; they cannot be stopped

in short distances or turned aside to avoid collisions. They travel through large areas of the state where the raising of livestock is the prevailing industry. On the other hand, passenger buses and truck lines are licensed businesses travelling the public highways. Their speed, size, and weight are limited. They are required to carry insurance for the protection of passengers and shippers. They are subject to traffic control and other safety measures. Airlines are so different in their methods of operation that there is no resemblance between them and the railroads as to regulation in their methods of operation. We think there are distinguishing differences in methods of operation between railroads and passenger buses, trucks, and airlines that render railroads a proper class for purposes of regulation under the rules announced by this court. The general rule is: "The Legislature may make a reasonable classification of persons, corporations and property for purposes of legislation concerning them, but the classification must rest upon real differences in situation and circumstances surrounding the members of the class, relative to the subject of the legislation, which render appropriate its enactment; and to be valid the law must operate uniformly and alike upon every member of the class so designated." Creigh v. Larsen, 171 Neb. 317, 106 N. W. 2d 187. See, also, State v. Chicago & N. W. Ry. Co., 147 Neb. 970, 25 N. W. 2d 824. We find that there is no discrimination as to class in the instant case.

The purpose of sections 74-601 to 74-604, R. R. S. 1943, was the protection of lives and property. The changed circumstances shown by the defendant do not relate to this problem. They relate to the loss of business to other forms of transportation, the reduction of track mileage and train miles, the loss of gross income, and the lowered assessments for tax purposes. These have no direct relation to the protection of passengers and train crews from injury, or livestock from damage. The

changed conditions asserted, admittedly true, are not such that eliminate or reduce the dangers the statutes were enacted to protect.

The contention is advanced that the absolute liability imposed on railroads for a violation of the fencing laws is a harsh one which is not imposed on other forms of transportation for their violation of regulatory statutes and that this in itself is so discriminatory as to require a holding of unconstitutionality. Our holding herein, that the purposes of the legislation have not been impaired by the changed conditions asserted, leaves the issue subject to the holding of this court in Middaugh v. Chicago & N. W. Ry. Co., *supra.* Admittedly sections 74-601 to 74-604, R. R. S. 1943, constitute an exercise of the police power which this court sustained as proper in the Middaugh case. The conditions which induced the passage of the fencing laws still exist and, consequently, we can find no basis for departing from the holdings of that case. That case reflects the legislative policy of the state and if incidental changes in conditions are to be given consideration, it is a change in legislative policy that must be sought and not a change by judicial holding.

The controlling rules in this case are supported by the following authorities: Berens v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co. (S. D.), 120 N. W. 2d 565; Louisville & Nashville R.R. Co. v. Stuart, 270 Ala. 285, 117 So. 2d 399; Fort Worth & D. C. Ry. Co. v. Welch, *supra.*

The defendant cites Atlantic Coast Line R. Co. v. Ivey, 148 Fla. 680, 5 So. 2d 244, 139 A. L. R. 973, and Louisville & Nashville R.R. Co. v. Faulkner (Ky.), 307 S. W. 2d 196, as supporting its position. The inapplicability of these cases is pointed up in the cases cited in support of this holding, particularly in Berens v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co., *supra.* We hold the two cases cited by the defendant to be nondecisive of

the present case for the reasons stated in the cases cited in support of this opinion.

We are in agreement with the conclusions reached in Berens v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co., *supra*, which states: "We have carefully considered each of the cases mentioned. South Dakota is still geared to a farm and ranch economy. Concentrations of live stock are heavier than they were several decades past. There is much open range country in many sparsely populated areas crossed by transcontinental railroads on which trains move at great speeds. Reason and safety still require and necessitate classification under legislative police powers between railroads and motor carriers conducting their business on public highways.

"We agree with what was said by the Texas and Alabama courts in the cases cited that the classification is reasonable and not arbitrary; that it rests upon real and substantial differences between railroads and motor carriers; that the classification reasonably promotes the public interest and welfare. Two of these statutes were enacted before statehood and the general fencing statute shortly after statehood. The legislature through the years has seen fit to retain these statutes. If changed conditions warrant their repeal, this should be by legislative action and not by judicial decision."

The judgment of the district court is in all respects correct and it is affirmed.

AFFIRMED.