STATE OF NEBRASKA, APPELLEE, V. MICHAEL T. MICHALSKI,
APPELLANT.

377 N.W.2d 510

Filed December 6, 1985.   No. 85-145.

Jeffrey M. Doerr of Kryger Law Office, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and FAHRNBRUCH, D.J.

WHITE, J.

On July 17, 1982, the Nebraska Unicameral joined a growing number of state legislatures responding to citizens' demands for strict laws dealing with drunk drivers on the nation's public roads. On this date 1982 Neb. Laws, L.B. 568, which amended Nebraska's existing drunk driving laws, went into effect. Intended as a comprehensive program reflecting a "get-tough" attitude toward drunk drivers, the amendments affected a total of nine separate sections of the then-existing drunk driving statutes. See Floor Debate, L.B. 568, Judiciary Committee, 87th Leg., 2d Sess. 8626-27 (Mar. 10, 1982) (statement of Sen. Nichol); Comment, *L.B. 568: Nebraska's New Drunken Driving Law*, 16 Creighton L. Rev. 90 (1982). At issue in this case is the constitutionality of one of those statutes, Neb. Rev. Stat. § 39-669.07 (Reissue 1984).

Michael T. Michalski was driving his 1969 Chevrolet pickup on a public road in Antelope County at approximately 7:20 p.m. on August 26, 1984. Deputy Ralph Black of the Antelope County Sheriff's Department observed Michalski's vehicle to be

traveling at a high rate of speed and in an erratic manner. When Deputy Black stopped the vehicle, he discovered that Michalski was driving on a suspended driver's license and that an open can of beer was in the pickup. After administering various field sobriety tests, all of which Michalski failed, Deputy Black placed Michalski under arrest for drunk driving and transported him to the sheriff's office in Neligh, Antelope County, Nebraska. There, Deputy Black read the implied consent form to Michalski, after which he turned Michalski over to another officer for the purpose of administering a breath alcohol test. The result of the test showed that Michalski had a blood alcohol content of .215.

Michalski was charged with driving while under the influence of alcohol, third offense. On September 14, 1984, he filed a motion to quash, alleging that § 39-669.07 violated numerous state and federal constitutional provisions. The Antelope County Court overruled Michalski's motion and, proceeding on stipulated facts and exhibits, found the defendant guilty of driving while under the influence of alcohol, third offense. The court proceeded immediately to an enhancement hearing, after which, pursuant to § 39-669.07(3), it sentenced Michalski to 120 days in the county jail, a $500 fine plus costs, and permanent revocation of his driver's license. The Antelope County District Court affirmed the conviction and sentence.

Michalski appeals from this judgment, assigning as error the county and district courts' findings on the constitutionality of § 39-669.07. Specifically, Michalski argues that the statute deprives him of equal protection of the law, due process of law, and the right to travel. He further contends that the statute's provisions violate the principle of separation of powers and constitute cruel and unusual punishment. His constitutional challenges are directed primarily, though not exclusively, at the language in § 39-669.07(3) providing for permanent revocation of an operator's license upon the individual's third drunk driving conviction. In pertinent part § 39-669.07 reads:

> It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor or of any drug or

when that person has ten-hundredths of one per cent or more by weight of alcohol in his or her body fluid as shown by chemical analysis of his or her blood, breath, or urine. Any person who shall operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor or of any drug or while having ten-hundredths of one per cent by weight of alcohol in his or her body fluid as shown by chemical analysis of his or her blood, breath, or urine shall be deemed guilty of a crime and, upon conviction thereof, shall be punished as follows:

. . . .

(3) If such person (a) has had two or more convictions under this section since July 17, 1982, (b) has been convicted two or more times under this section as it existed prior to July 17, 1982, (c) has been convicted two or more times under a city or village ordinance enacted pursuant to this section either prior or subsequent to July 17, 1982, or (d) has been convicted as described in subdivisions (3)(a) to (3)(c) of this section a total of two or more times, such person shall be guilty of a Class W misdemeanor and the court shall, as part of the judgment of conviction, order such person to never again drive any motor vehicle in the State of Nebraska for any purpose from the date of his or her conviction, and shall order that the operator's license of such person be permanently revoked.

If the court places such person on probation or suspends the sentence for any reason, the court shall, as one of the conditions of probation or sentence suspension, order such person not to drive any motor vehicle in the State of Nebraska for any purpose for a period of one year, and such order of probation shall include as one of its conditions confinement in the city or county jail for seven days.

For each conviction under this section, the court shall as part of the judgment of conviction make a finding on the record as to the number of the defendant's prior convictions under this section prior or subsequent to July 17, 1982, and the defendant's prior convictions under a

city or village ordinance enacted pursuant to this section either prior or subsequent to July 17, 1982. The defendant shall be given the opportunity to review the record of his or her prior convictions, bring mitigating facts to the attention of the court prior to sentencing, and make objections on the record regarding the validity of such prior convictions.

We examine first Michalski's claim that § 39-669.07(3) deprives him of equal protection of the law.

The thrust of Michalski's argument is that the statute classifies unreasonably and arbitrarily because it provides for no exemption for those who require private motor vehicle transportation to, from, or during their employment. Permanent revocation of one's driver's license under these circumstances means the loss of livelihood for some thrice-convicted drunk drivers. On the other hand, those who are unemployed or who do not depend upon private motor vehicle transportation in their jobs feel the effects of the penalty far less severely. This dissimilar impact, Michalski argues, exemplifies a classification that is arbitrary, unreasonable, and violative of state and federal constitutional guarantees.

U.S. Const. amend. XIV, § 1, provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." See, also, Neb. Const. art. I, § 1. Equal protection guarantees that similar persons will be dealt with similarly by the government. See generally J. Nowak, R. Rotunda & J. Young, Constitutional Law, *Equal Protection* ch. 16, § IB (1983). It does not foreclose government from classifying persons or from differentiating one class from another when enacting legislation. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S. Ct. 337, 55 L. Ed. 369 (1911). As one commentator has put it, "The equal protection of the laws is a 'pledge of the protection of equal laws.' But laws may classify. And 'the very idea of classification is that of inequality.' " Tussman & tenBroek, *The Equal Protection of the Laws*, 37 Calif. L. Rev. 341, 344 (1949) (quoting *Atchison, Topeka &c. Railroad v. Matthews*, 174 U.S. 96, 19 S. Ct. 609, 43 L. Ed. 909 (1899)).

The standard of review used by courts when reviewing

statutes challenged on equal protection grounds depends upon the nature of the classification and the rights affected. Although the U.S. Supreme Court has suggested a third standard appropriate when examining classifications based upon sex, *Craig v. Boren*, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976), alienage, *Mathews v. Diaz*, 426 U.S. 67, 96 S. Ct. 1883, 48 L. Ed. 2d 478 (1976), and illegitimacy, *Trimble v. Gordon*, 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977), two standards of review dominate equal protection analyses.

If the legislative classification involves either a suspect class, *Loving v. Virginia*, 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967) (race), or a fundamental right, *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 86 S. Ct. 1079, 16 L. Ed. 2d 169 (1966) (voting), courts will analyze the statute with strict scrutiny. Under this test, strict congruence must exist between the classification and the statute's purpose. The end the legislature seeks to effectuate must be a compelling state interest, and the means employed in the statute must be such that no less restrictive alternative exists. On the other hand, if the statute involves economic or social legislation not implicating a fundamental right or suspect class, courts will ask only whether a rational relationship exists between a legitimate state interest and the statutory means selected by the legislature to accomplish that end. See, e.g., *Vance v. Bradley*, 440 U.S. 93, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979); *New Orleans v. Dukes*, 427 U.S. 297, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976). Upon a showing of a rational relationship between means and ends, courts will find such legislation constitutionally healthy.

Driving is not a fundamental right, and drunk drivers are not a suspect class. See, *Ruge v. Kovach*, 467 N.E.2d 673 (Ind. 1984); *Yeckley v. Com., Dept. of Transp.*, 81 Pa. Commw. 576, 474 A.2d 71 (1984); *Com., Dept. of Transp. v. Slater*, 75 Pa. Commw. 310, 462 A.2d 870 (1983). While the U.S. Supreme Court has blurred the distinction between "right" and "privilege" with respect to driving, the Court has not defined a driver's license as a "right" but, instead, has referred to it as an "entitlement" requiring some degree of due process in the revocation procedure. See *Bell v. Burson*, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971). There also exists no

fundamental right to drive based upon a fundamental right of employment. See *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976); *Ruge v. Kovach, supra*. Finally, unlike the races, drunk drivers do not constitute a suspect class "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or regulated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 28, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973).

We therefore examine § 39-669.07 using the rational relation standard of review. As we have repeatedly held, state laws are accorded a presumption of constitutionality. *State v. Edmunds*, 211 Neb. 380, 318 N.W.2d 859 (1982). Further, the power of classification rests with the legislature, and we will not interfere with that power if real and substantial differences exist which afford a rational basis for classification. *State ex rel. Halloran v. Hawes*, 203 Neb. 405, 279 N.W.2d 96 (1979). Given a statute's presumption of validity and the legislature's inherent power to classify for legitimate purposes, a challenger bears a heavy burden in demonstrating that the classification is arbitrary and not rationally related to a legitimate governmental end.

Although courts afford legislatures considerable deference under the rational relation test, some restraints exist. As we have said, legislative classifications must be reasonable and not arbitrary. *Nebbia v. New York*, 291 U.S. 502, 54 S. Ct. 505, 78 L. Ed. 940 (1934); *Linenbrink v. Chicago & N. W. Ry. Co.*, 177 Neb. 838, 131 N.W.2d 417 (1964). Those challenging a statute's reasonableness traditionally rely upon the argument that its classification is either overinclusive or underinclusive. See, e.g., *Jimenez v. Weinberger*, 417 U.S. 628, 94 S. Ct. 2496, 41 L. Ed. 2d 363 (1974).

An overinclusive classification burdens a wider than necessary range of individuals, extending beyond those persons possessing the trait contributing to the mischief or evil the legislature seeks to eradicate. See generally Tussman & tenBroek, *The Equal Protection of the Laws*, 37 Calif. L. Rev. 341 at 348-50 (1949). An underinclusive classification exists when all persons in the class are indeed perpetrators of the

mischief or evil the state wishes to eliminate, but others who possess the same undesirable trait remain outside the class. *Id.* Finally, some classifications are so constitutionally infirm that they can be challenged on both overinclusive and underinclusive grounds. See, e.g., *Hirabayashi v. United States*, 320 U.S. 81, 63 S. Ct. 1375, 87 L. Ed. 1774 (1943).

Michalski's equal protection argument does not follow either of these traditional lines of attack. He does not and cannot contend that the statute as written excludes or includes improperly. No thrice-convicted drunk driver is excluded from the class, and no lesser offender or nonoffender is swept into a net of permanent license revocation.

Instead, Michalski relies upon the impact of the statute's permanent revocation sanction as demonstrative of an arbitrary classification. He claims that permanent revocation burdens persons who are not similarly situated, that is, those who depend on their vehicles in their livelihood and those who do not.

In support, he relies on this court's decision in *Creigh v. Larsen*, 171 Neb. 317, 106 N.W.2d 187 (1960). *Creigh* involved a statute fixing taxes on intangible personal property and assessing penalties for failure to report the property on tax returns. The tax rates on the particular classes of intangible property were statewide and uniform in application. The penalties, however, differed because they were computed by multiplying the actual value of omitted intangible property by the applicable rate for tangible property as fixed by varying mill levies in the state's districts. Although the valuation assessment on intangible property was uniform, the penalty varied, depending upon where the taxpayer lived. In effect, taxpayers who had committed identical violations of the taxing statute were paying disparate penalties.

Finding the penalty scheme invalid on equal protection grounds, the court stated the general rule:

 " 'The legislature may make a reasonable classification of persons, corporations and property for purposes of legislation concerning them, but the classification must rest upon real differences in situation and circumstances surrounding the members of the class, relative to the

subject of the legislation, which render appropriate its enactment; and to be valid the law must operate uniformly and alike upon every member of the class so designated.' " *Creigh, supra* at 321, 106 N.W.2d at 190, quoting *State ex rel. Ralston v. Turner*, 141 Neb. 556, 4 N.W.2d 302 (1942).

The *Creigh* court found the classification to be rationally related to the legitimate state interests of tax assessment and tax collection. However, the problem with the statute in *Creigh*, and the critical difference between it and § 39-669.07, was that the magnitude of the offense as measured by the amount paid in penalties was dependent upon the valuation of tangible property in various state districts. The statute's penalty was incomplete until one of many highly divergent mill levies was applied to the value of omitted intangible property. It was this application of the tangible rate to intangible property that the court found to be arbitrary:

> But the application of the tangible rate to intangible property has no reasonable relation to the magnitude of the offense where the intangible rate is uniform throughout the state. It discriminates between members of the established class in that it produces varying penalties for identical offenses among members of the class.

*Creigh, supra* at 323, 106 N.W.2d at 191.

We believe that Michalski's reliance on *Creigh* is misplaced. We further believe that the classification made in § 39-669.07, that is, the line drawn between drivers who are drunk and drivers who are sober, is one rationally related to a legitimate governmental end. See *Kellum v. Thorneycroft, etc.*, 133 Ariz. 115, 649 P.2d 994 (1982). The penalty of permanent license revocation must and does operate uniformly on all members of the class because the statute classifies not on the basis of employment conditions or transportation requirements but on blood alcohol content and repeat offenses.

As part of his equal protection argument, Michalski also contends that § 39-669.07 is unconstitutional in that it exempts from its coverage mopeds, self-propelled invalid chairs, and vehicles operated upon rails. These exclusions are not direct. Rather, mopeds, self-propelled invalid chairs, and vehicles operated upon rails are exempted from the definition of

"motor vehicle" in Neb. Rev. Stat. § 39-602(53) (Reissue 1984), so that statutes like § 39-669.07, which pertain only to operators of "motor vehicles," automatically exclude operators of these three types of vehicles.

We do not agree with Michalski's position. We have already stated the general rule that classifications appearing in social or economic legislation require only a rational relationship between the state's legitimate interest and the means selected to accomplish that end. The ends-means fit need not be perfect; it need only be rational.

Consistent with its purpose of protecting the public from drunk drivers, the Legislature exempted mopeds and self-propelled invalid chairs from the statute's coverage presumably because the threat of harm to citizens from intoxicated operators of these vehicles is not as great as is the threat posed by an intoxicated driver of a vehicle of unlimited weight and speed. Further, the exemption of vehicles operated on rails is rational in light of the fact that another statute deals with intoxicated operators of these vehicles. Neb. Rev. Stat. § 74-706 (Reissue 1981). In sum, we cannot say that the classifications in § 39-602(53) as applied in § 39-669.07 are arbitrary and without rational bases.

We next consider Michalski's claim that § 39-669.07 denies him due process of law insofar as it does not provide him with a hearing prior to license revocation. The importance of the hearing, in Michalski's view, is linked to significant property and liberty interests at stake. Citing cases which have classified a driver's license as both a property and liberty interest, *State v. Moseng*, 254 Minn. 263, 95 N.W.2d 6 (1959), and *Matter of Schutt v. Macduff*, 205 Misc. 43, 127 N.Y.S.2d 116 (1954), he urges us to conclude that because no meaningful hearing is provided in the procedures of § 39-669.07, the statute deprives him of a protected interest without due process of law.

For a number of reasons we do not accept Michalski's proposition. The U.S. Supreme Court addressed the issue of whether and how much process is due in driver's license suspension proceedings in *Bell v. Burson*, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971). Rather than relying upon the "right-privilege" distinction, the Court labeled a driver's license

an "entitlement," the revocation or suspension of which requires procedural due process guaranteed by the fourteenth amendment.

The process that is due must be "meaningful," *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965), and "appropriate to the nature of the case," *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

The Court found the Georgia financial responsibility statute at issue in *Bell* to be constitutionally impaired because it did not provide a forum, prior to license suspension, for the determination of a driver's liability following an accident. Liability was presumed and the license suspended automatically without any kind of hearing.

A significant difference exists between the Georgia statute and § 39-669.07. Section 39-669.07 is a penal statute which provides for a trial on the issue of Michalski's guilt, an enhancement hearing on the issue of Michalski's prior convictions, and a sentencing hearing where Michalski was provided the opportunity "to review the record of his . . . prior convictions, bring mitigating facts to the attention of the court prior to sentencing, and make objections on the record regarding the validity of such prior convictions." § 39-669.07(3). At each stage of the proceedings, Michalski was represented by counsel, either selected by him or by the court. Furthermore, the statute is clear in its terms and " 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .' " *Richardson v. City of Omaha*, 214 Neb. 97, 102-03, 333 N.W.2d 656, 660 (1983).

In *Stauffer v. Weedlun*, 188 Neb. 105, 195 N.W.2d 218 (1972), this court found constitutional the procedures afforded in the statute providing for revocation of a driver's license under the point system. The relevant statute provided for neither notice nor hearing prior to revocation by the Department of Motor Vehicles.

The *Stauffer* court distinguished its facts from those in *Bell v. Burson, supra*, where the driver's license was automatically suspended under the financial responsibility law:

> A revocation for traffic violations under the point system of our statutes involves a substantially different situation than revocation under the financial responsibility acts. . . .
>
> . . . .
>
> The financial responsibility statutes in effect create without any hearing a presumption of fault. This, if we understand the footing of Bell v. Burson, *supra*, is their constitutional deficiency. Such a situation does not exist in the case here involved.

*Stauffer, supra* at 109, 112, 195 N.W.2d at 222-23.

We, too, see a significant difference between automatic license suspension under financial responsibility laws and revocation under the provisions of a criminal drunk driving statute. The process involved in § 39-669.07 is neither automatic nor presumptive, except in favor of Michalski's innocence. If anything, he was provided with heightened due process under the terms and conditions of § 39-669.07. Accordingly, we find no merit in Michalski's argument that the statute deprives him of due process of law.

We next address Michalski's contention that § 39-669.07 deprives him of his constitutionally protected right to interstate travel. As a necessary part of his argument, Michalski asserts that the right to travel interstate perforce includes a right to travel intrastate.

Because the right to interstate travel has been characterized as fundamental, *Graham v. Richardson*, 403 U.S. 365, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971), and *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969), courts examine statutes impairing that right using the strict scrutiny standard of review. Under this strict standard, Michalski urges, the statute cannot withstand constitutional scrutiny because the State's interest, while significant, is not compelling to the degree it justifies impairing a fundamental right. Furthermore, Michalski claims, the ends-means fit is not sufficiently congruent because alternatives less restrictive than permanent license deprivation exist by which to accomplish the State's purposes.

We do not believe that § 39-669.07 impairs Michalski's right to travel as it has been defined by the U.S. Supreme Court and

lower courts. The basic flaw in Michalski's argument is that he equates the right to travel with the right to travel by way of a particular mode of transportation. While the revocation of Michalski's driver's license limits his options as to method of transportation, it does not impair his right to travel or his right to reach a given destination. He continues to be able to travel within and without the state wherever and whenever he chooses.

We agree with the reasoning of the Colorado Supreme Court in *Heninger v. Charnes*, 200 Colo. 194, 613 P. 2d 884 (1980), where the court found that the revocation of one's driver's license does not burden the constitutional right to travel:

> Any incidental disadvantage in appellant's travel options is directly attributable to his voluntary and repeated violations of the traffic laws. *More importantly, such incidental disadvantage is of no constitutional significance to his basic right to travel interstate.* The revocation of appellant's license to drive in no manner impairs his freedom to move from state to state. He has been neither locked into nor fenced out of the state of Colorado and is as free to come and go at will as he was before the revocation.

(Emphasis supplied.) *Id*. at 198, 613 P.2d at 887.

Therefore, we find no merit in Michalski's argument that § 39-669.07 impairs his right to travel.

We turn next to Michalski's contention that § 39-669.07 violates the separation of powers doctrine, in that the statute sets mandatory conditions of probation. While he does not argue that the Legislature has no power to decree probation as punishment for certain offenses, Michalski claims that § 39-669.07, which establishes mandatory terms and conditions of probation for this offense, is a legislative encroachment into the judicial arena, violative of article II, § 1, of the Nebraska Constitution.

In *State v. Havorka*, 218 Neb. 367, 355 N.W.2d 343 (1984), we specifically left open the question of the Legislature's power to restrict the trial court's authority to place an individual on probation under whatever conditions the court determines. Because this court is not in the habit of rendering advisory

opinions, we similarly decline to reach the issue today. *State v. Hochstetler*, 214 Neb. 482, 334 N.W.2d 455 (1983).

To be in a position to challenge the constitutionality of a statute, a party must be adversely affected by the provisions at issue. Absent a justiciable dispute, we have no power to pass summarily on the constitutionality of a legislative act. *State ex rel. Nebraska Nurses Assn. v. State Board of Nursing*, 205 Neb. 792, 290 N.W.2d 453 (1980).

As a result of his third drunk driving conviction, Michalski had his driver's license permanently revoked, was fined $500 plus costs, and was sentenced to 120 days in jail. He was not placed on probation; therefore, he cannot challenge the provisions of § 39-669.07 pertaining to probation and its conditions, and we offer no opinion as to their constitutionality.

Finally, Michalski argues that the permanent license revocation penalty of § 39-669.07(3) violates state and federal constitutional provisions prohibiting cruel and unusual punishment. See, U.S. Const. amends. VIII and XIV; Neb. Const. art. I, § 9. Although Michalski does not raise it in his argument, article I, § 15, of the Nebraska Constitution requires that all penalties be proportioned to the nature of the offense. The U.S. Supreme Court has repeatedly held that the eighth amendment's proscription of cruel and unusual punishment prohibits not only barbaric punishments but also sentences that are disproportionate to the crime committed. See, e.g., *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983); *Weems v. United States*, 217 U.S. 349, 30 S. Ct. 544, 54 L. Ed. 793 (1910).

Michalski believes that § 39-669.07(3) cannot withstand constitutional scrutiny under the test enunciated by the Supreme Court in *Solem v. Helm, supra*. Specifically, he claims that the harshness of the penalty of permanent license revocation is not proportionate to the gravity of the offense and that the penalty is unconstitutionally severe when compared to penalties for the same offense in other jurisdictions.

We do not agree. *Solem* set forth the factors an appellate court should consider when evaluating whether a sentence constitutes cruel and unusual punishment. These factors are (1) the gravity of the offense and the harshness of the penalty, (2)

the sentences imposed on other criminals for like offenses in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm, supra*; *State v. Brand*, 219 Neb. 402, 363 N.W.2d 516 (1985).

Regarding the first prong of the analysis, the *Solem* court stated that the gravity of an offense can be determined in part by comparing with other offenses the "harm caused or threatened to the victim or society." 463 U.S. at 292. Few would question the seriousness of the harm caused or threatened to the victim and society at the hands of a repeatedly intoxicated driver. The potential for death or serious injury is tragically high among those unfortunate enough to encounter a drunk driver on the road. Although drunk driving is not a crime of violence by penal code standards, a motor vehicle in the hands of a drunk driver is a weapon as surely as is a knife, gun, or club in the hands of an assailant. We have no difficulty concluding, as did the Legislature, that drunk driving is a serious offense, particularly when the defendant has previously committed the same act. *State v. Brand, supra.*

The second prong of the *Solem* analysis is not applicable here because § 39-669.07 apparently involves the only Class W misdemeanor in the state.

The third prong of the *Solem* test directs us to compare the sentence imposed with those existing in other states for the same offense. Our review of other states' statutes indicates that while permanent license revocation is among the harsher penalties, it is by no means unheard of. For example, under varying circumstances a repeatedly convicted drunk driver currently may lose his or her driving privileges forever in Vermont, South Carolina, North Carolina, and Connecticut. Vt. Stat. Ann. tit. 23, § 1208(d) (Supp. 1985); S.C. Code Ann. § 56-5-2990 (Law. Co-op. Supp. 1984); N.C. Gen. Stat. § 20-19(e) (1983); Conn. Gen. Stat. Ann. § 14-227a(h) (West Supp. 1984). In Colorado, license revocation is "indefinite" after the third offense and in no case is it less than 2 years. Colo. Rev. Stat. § 42-2-122(1)(i) (repl. 1984). In West Virginia and Virginia, revocation upon the third conviction is for 10 years and indefinitely thereafter, with reissue in the discretion of the commissioner of motor vehicles

(West Virginia) and the circuit court (Virginia). W. Va. Code § 17C-5-2(c) (1984); Va. Code § 46.1-421 (Cum. Supp. 1985). In Ohio, revocation can be for a period up to 10 years, Ohio Rev. Code Ann. § 4507.16 (Page Supp. 1984), and in Florida revocation is for not less than 10 years, Fla. Stat. Ann. § 322.28(3) (West Supp. 1985).

Based upon the foregoing analysis, we conclude that § 39-669.07(3) is constitutionally valid and does not constitute cruel and unusual punishment under either the state or federal Constitution. In this regard we stated in *State v. Brand, supra*, that the provisions in the Nebraska Constitution do not require more than do those of the eighth amendment of the U.S. Constitution. The Nebraska constitutional prohibition against cruel and unusual punishment "does not abridge the Legislature's power to select such punishment as it deems most effective in the suppression of crime." *State v. Ruzicka*, 218 Neb. 594, 598, 357 N.W.2d 457, 461 (1984). Neither does the requirement that all penalties be proportioned to the nature of the offense do so. *State v. Brand, supra*.

Legislatures are not required to select the least severe penalty possible, so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). Reviewing courts grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes. *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). The constitutional provision preventing cruel and unusual punishment was not intended to abridge this legislative authority, *State v. Tucker*, 183 Neb. 577, 162 N.W.2d 774 (1968), and in assessing a punishment selected by a democratically elected legislature against the constitutional measure, courts presume that the sanction is valid, *Gregg v. Georgia, supra*. We conclude that Michalski has not met the burden of demonstrating that the revocation penalty of § 39-669.07(3) is either cruel, unusual, or disproportionate.

For the foregoing reasons the order of the district court is affirmed.

AFFIRMED.