STATE OF NEBRASKA, APPELLEE, V. BRIAN HOWARD BAINBRIDGE, APPELLANT.

543 N.W.2d 154

Filed February 2, 1996.   No. S-95-067.

Michael W. Heavey for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and GERRARD, JJ., and NORTON, D.J., Retired.

PER CURIAM.

This is an appeal by Brian Howard Bainbridge, defendant-appellant, from the denial of his application, pursuant to former Neb. Rev. Stat. § 39-669.19 (Cum. Supp. 1992), for reduction to time served of a 15-year revocation of his motor vehicle operator's license. Section 39-669.19 has since been transferred to Neb. Rev. Stat. § 60-6,209 (Reissue 1993). The county court for Douglas County denied Bainbridge's application for reduction. The court found that Bainbridge had not been cured and therefore concluded that he was not entitled to a reduction. The court, following *State v. Philipps*, 246 Neb. 610, 521 N.W.2d 913 (1994), held that it did not have the constitutional authority to reduce Bainbridge's sentence because § 60-6,209 violated the separation of powers clause contained in Neb. Const. art. II, § 1. The district court for Douglas County affirmed.

Bainbridge assigns two errors. He contends that (1) the trial court erred in determining that § 60-6,209 violates the Nebraska Constitution's separation of powers clause, and (2) if the statute is constitutional, the trial court abused its discretion by failing to reduce the revocation of Bainbridge's operator's

license to time served. We affirm the judgment of the district court.

On March 14, 1989, Bainbridge was sentenced on a charge of driving while intoxicated (DWI). This was his sixth such offense. Bainbridge was sentenced to 180 days in jail and a $500 fine. The court also sentenced Bainbridge to a 15-year revocation of his motor vehicle operator's license pursuant to Neb. Rev. Stat. § 39-669.07(c) (Reissue 1988), since transferred to Neb. Rev. Stat. § 60-6,196(2)(c) (Reissue 1993).

In April 1994, Bainbridge filed an application to have his license revocation reduced to time served pursuant to § 39-669.19, since transferred to § 60-6,209.

On September 29, 1994, the county court held a hearing to determine whether a reduction should be granted. At the hearing, the State argued to the county court that § 60-6,209 was unconstitutional. The prosecutor stated at the hearing:

> At this time, Judge, in light of the recent Supreme Court decision that was decided last week, the State would contend that the statute that the legislature passed enacting the provision that the Court may reduce the 15-year term to a 5-year term, is unconstitutional as a violation of the separation of powers.

At the conclusion of the proceedings, the county court held that Bainbridge's sentence should not be reduced. The court stated that based on the evidence, Bainbridge had not yet been cured. The judge also concluded that he no longer had the constitutional authority to reduce the revocation sentence. He based this conclusion on the Nebraska Supreme Court decision in *Philipps, supra*, decided 6 days prior to the hearing, which held that a sentence reduction statute was unconstitutional.

Concerning this court's standard of review, the alleged unconstitutionality of a statute presents a question of law which must be determined by a reviewing court independently from the conclusion reached by the inferior court. *State v. Jones*, 248 Neb. 117, 532 N.W.2d 293 (1995); *Philipps, supra; State v. Schmailzl*, 243 Neb. 734, 502 N.W.2d 463 (1993). "A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality." *Jones*, 248 Neb. at 119, 532 N.W.2d at 295. Accord *Philipps, supra*. Regarding a

penal statute, it must be construed so as to meet constitutional requirements if such can reasonably be done. *Jones, supra*. The burden of establishing a statute's unconstitutionality is on the party claiming it to be unconstitutional. *Id.*; *Philipps, supra*. Also, the unconstitutionality of a statute must be clearly established before a court may declare it void. *Philipps, supra*; *State v. LaChapelle*, 234 Neb. 458, 451 N.W.2d 689 (1990).

Under his first assignment of error, Bainbridge contends that the court erred in finding the sentence reduction statute previously found in § 39–669.19, now found in § 60–6,209, unconstitutional. Bainbridge first argues that the county court should never have considered the constitutionality issue, claiming the State failed to properly raise the issue at Bainbridge's hearing. It is true that a constitutional issue that has not been presented to or passed upon by the trial court is not appropriate for consideration on appeal. *Houska v. City of Wahoo*, 235 Neb. 635, 456 N.W.2d 750 (1990); *Snyder v. IBP, inc.*, 235 Neb. 319, 455 N.W.2d 157 (1990). " '[W]e have long held that the issue must be specifically called to the trial court's attention in some way so that it has an opportunity to rule upon it . . . .' " *State v. Ulrich*, 217 Neb. 817, 819–20, 351 N.W.2d 417, 419 (1984). In this case, the constitutional issue on appeal was called to the attention of the county judge. The record indicates that the court based its final decision in part on its finding that the statute was unconstitutional. This assignment is without merit.

Bainbridge contends that even if it was proper for the court to consider the constitutionality issue, the court erred in determining § 60–6,209 unconstitutional as a violation of the separation of powers clause. In Neb. Const. art. II, § 1, the powers of the state government are separated into three distinct departments, none of which shall exercise the powers belonging to the others. The power to commute sentences is entrusted in an executive department board of our state government known as the Board of Pardons. Article IV, § 13, of the Nebraska Constitution reads, in relevant part, "The Governor, Attorney General and Secretary of State, sitting as a board, shall have power to . . . grant . . . commutations in all cases of conviction for offenses against the laws of the state . . . ."

In *State v. Philipps*, 246 Neb. 610, 521 N.W.2d 913 (1994), this court found unconstitutional Neb. Rev. Stat. § 29-2308.01 (Reissue 1989), which provided that the sentencing court may reduce a sentence it had previously imposed within 120 days after (1) the sentence was imposed or probation revoked or (2) the court received a mandate issued upon affirmance of the judgment or dismissal of the appeal. This court held that article IV, § 13, clearly entrusts the power of commutation to the Board of Pardons and that a statute empowering the judiciary to reduce sentences already imposed violates the separation of powers clause found in article II, § 1. We stated that "a sentencing court which chooses to substitute a milder punishment for the sentence it had originally imposed does the very thing which defines an act of commutation." *Philipps*, 246 Neb. at 616, 521 N.W.2d at 917.

The holding and rationale of *Philipps* were followed by this court in *State v. Jones*, 248 Neb. 117, 532 N.W.2d 293 (1995). The defendant in *Jones* was a sex offender seeking a sentence redetermination under Neb. Rev. Stat. § 29-2931 (Cum. Supp. 1994), which provided the trial judge authority to (1) reduce the offender's sentence by placing him on probation with the condition that he enroll in an approved aftercare treatment program or (2) modify the original sentence to allow earlier eligibility for parole. We concluded, following *Philipps*, that § 29-2931 was unconstitutional because it permitted the judicial branch to exercise the power of commutation, a power that clearly belongs to the executive branch.

The sentence reduction statute at issue in this case states in relevant part:

> Any revocation of a person's operator's license pursuant to sections 60-6,196, 60-6,197, and 60-6,199 to 60-6,208 for a third or subsequent time for a period of fifteen years may be reduced to the time served upon application to the court if the court finds that such applicant has served at least five years of such revocation and that all of the [listed requirements] are shown by the applicant by a preponderance of the evidence . . . .

§ 60-6,209. Section 60-6,209 reduces a 15-year license revocation sentence that is imposed under either

§ 60–6,196(2)(c) or Neb. Rev. Stat. § 60–6,197(4)(c) (Reissue 1993). Bainbridge was sentenced under § 39–669.07(c), which is currently § 60–6,196(2)(c). Section 60–6,196 reads, in relevant part:

> (2) Any person who operates or is in the actual physical control of any motor vehicle while in a condition described in subsection (1) of this section shall be guilty of a crime and upon conviction punished as follows:
>
> . . . .
>
> (c) If such person . . . has had two or more convictions under this section in the eight years prior to the date of the current conviction . . . such person shall be guilty of a Class W misdemeanor, and the court shall, as part of the judgment of conviction, order such person not to drive any motor vehicle in the State of Nebraska for any purpose for a period of fifteen years from the date ordered by the court and shall order that the operator's license of such person be revoked for a like period.

In order for § 60–6,209 to invade the Board of Pardons' power to commute sentences and therefore violate the separation of powers clause, the purpose behind the 15–year license revocation under § 60–6,196(2)(c) must be one of punishment rather than remedial. The essence of a commutation of a sentence is the substitution of a milder punishment. *State v. Philipps, supra*; *Lincoln v. Sigler*, 183 Neb. 347, 160 N.W.2d 87 (1968). We find that the 15–year revocation of an operator's license under § 60–6,196(2)(c) is punishment. Therefore, § 60–6,209 is unconstitutional, as it permits a judicial commutation of a sentence of punishment.

We first look to the plain language of § 60–6,196(2)(c). "When the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning." *State v. Wragge*, 246 Neb. 864, 866, 524 N.W.2d 54, 56–57 (1994). Analyzing the language of § 60–6,196(2)(c) shows that the statute clearly defines the 15–year revocation as serving as punishment. The introductory language of subsection (2) of § 60–6,196 states that a defendant shall be "punished" as provided in the statute. Subsection (2)(c) pertains to defendants who have had two or more DWI

convictions in the 8 years previous to the current conviction. It states that the defendant "shall be guilty of a Class W misdemeanor" and orders the court "as part of the judgment of conviction" to revoke the defendant's license for a period of 15 years. As the plain language of § 60–6,196(2)(c) indicates, the revocation is part of the overall punishment of the defendant, in conjunction with the fines and jail terms imposed for the offense under Class W misdemeanors.

This court has previously referred to the license revocation now found under § 60–6,196(2)(c) as punishment. *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985), pertained to permanent revocation under § 39–669.07 for third–offense DWI, now a 15–year revocation under § 60–6,196. This court found that the license revocation penalty deserved analysis under the Cruel and Unusual Punishment Clause of both the U.S. and Nebraska Constitutions. We held that the defendant had failed to prove that the revocation penalty was either cruel, unusual, or disproportionate. Referring to the revocation penalty, we stated, "The Nebraska constitutional prohibition against cruel and unusual punishment 'does not abridge the Legislature's power to select such punishment as it deems most effective in the suppression of crime.' " *Michalski*, 221 Neb. at 395, 377 N.W.2d at 520. Therefore, under *Michalski*, although the license revocation is not cruel or unusual punishment, it is punishment.

Bainbridge contends that following this court's decision in *Durfee v. Ress*, 163 Neb. 768, 81 N.W.2d 148 (1957), the revocation of an operator's license is not a penalty, but, rather, is imposed to serve a remedial purpose of public safety. *Durfee* involved a license revocation under the point system. The defendant argued that the application of recently enacted statutes under the point system added to his penalty of punishment, violating the Ex Post Facto Clause of the Constitution. The court rejected the defendant's argument, stating, "We conclude that the revocation of a license to operate a motor vehicle in this state under the point system provided by statute is not an added punishment for the offense or offenses committed as a result of which the points are accumulated." *Durfee*, 163 Neb. at 773, 81 N.W.2d at 151.

The 15-year revocation imposed under § 60-6,196 is distinguishable from the revocation under *Durfee*. *Durfee* was decided before the 15-year license revocation was statutorily enacted. At the time of the *Durfee* decision in 1957, the revocation period for third-offense DWI was 1 year. See 1953 Neb. Laws, ch. 214, § 1, p. 755. Moreover, *Durfee* did not pertain to a license revocation for a penal conviction of third-offense DWI. Rather, it involved a 1-year administrative revocation under the point system. Therefore, we find *Durfee* inapplicable.

This court has also recently held that license revocation under the administrative license revocation (ALR) statutes, Neb. Rev. Stat. §§ 60-6,205 to 60-6,208 (Reissue 1993), serves a primarily remedial purpose. *State v. Hansen, ante* p. 177, 542 N.W.2d 424 (1996). In *Hansen*, we addressed the issue of whether ALR was punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution. This court held that ALR was primarily remedial, while serving a secondary deterrent purpose.

This court's analysis in *Hansen* of ALR does not apply to the 15-year license revocation imposed under § 60-6,196(2)(c) for third-offense DWI convictions. This court's analysis in *Hansen* was specifically limited to administrative revocations under the ALR statutes. We addressed only the legislative purposes explicitly set forth in the ALR statutes. We stated, "Thus, we have no difficulty finding that substantial remedial purposes *underlie the administrative license revocation statutes* and conclude that their remedial character is not defeated by the fact that the statutes also play a role in deterring others from driving drunk." (Emphasis supplied.) *Hansen, ante* at 189, 542 N.W.2d at 433. There is a much stronger deterrent purpose and effect when a 15-year license revocation is imposed. The holding and rationale of *Hansen* are therefore inapplicable to the 15-year license revocation imposed under § 60-6,196(2)(c).

In sum, pursuant to § 60-6,209, a court has the power to substitute a milder punishment for a sentence that has already been imposed. Specifically, the court has the power to reduce a 15-year license revocation already imposed under § 60-6,196(2)(c) to time served after the defendant has served

5 years of the revocation. Section 60–6,209 permits the judicial branch to exercise the power of commutation, a power which clearly belongs to the executive branch pursuant to article IV, § 13, of the Nebraska Constitution. Therefore, § 60–6,209 is unconstitutional as a violation of the separation of powers clause of the Nebraska Constitution.

Since we hold that § 60–6,209 is unconstitutional, we need not address Bainbridge's second assignment of error, regarding the court's abuse of discretion. The district court was not in error in denying Bainbridge's application for reduction.

AFFIRMED.

CONNOLLY, J., not participating.

WHITE, C.J., concurring.

I concur with the majority's holding that a statute that authorizes a court to reduce a 15–year vehicle operator's license revocation to time served is a commutation of a sentence, in violation of article II, § 1, of the Nebraska Constitution. However, I believe that in analyzing the punishing nature of a license revocation, it is time for this court to reexamine what exactly is being taken away from the person as a result of the license revocation.

Driver's licenses historically have been referred to by this court as privileges. See, *State v. Hansen, ante* p. 177, 542 N.W.2d 424 (1996); *State v. Green*, 229 Neb. 493, 427 N.W.2d 304 (1988). This court's continuous assertion that a driver's license is a privilege is outmoded and, at best, inaccurate, if not incorrect. The U.S. Supreme Court has referred to an operator's license, for procedural due process purposes, as an "entitlement," and not as a mere privilege that could be revoked by a state for cause. See *Bell v. Burson*, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971). This court has acknowledged the U.S. Supreme Court's classification in *Bell* by referring to the revocation of a license as the denial of an entitlement because it may result in a loss of livelihood to the licensee. See, *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988); *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985). Unfortunately, this court continuously reverts back to erroneously labeling driver's licenses as privileges, as recently

as this term. See *Hansen, supra*.

The facts of this case illustrate that the revocation of a license is not a mere denial of a privilege. Bainbridge operates a 500–acre farm in rural Nebraska. He stated that having no license severely inhibits his abilities to operate his farm and to carry out everyday activities. He indicates,

> [i]t is ten miles to the nearest town. Whenever he transports commodities to market, whenever he needs food or supplies, whenever he needs repair parts for his equipment, whenever he needs anything whatsoever to maintain his business operation or to sustain his life, he must obtain transportation from one of his neighbors.

Brief for appellant at 16. This has been imposed on Bainbridge for 6 years of his life and is to continue for another 9 years. This 15–year revocation has resulted in a loss of livelihood for Bainbridge. In short, this revocation is more than a mere denial of a privilege.

A conclusion that a loss of one's right to drive is to be analyzed under a denial–of–a–privilege type of analysis is a conclusion ignorant of the practical realities of driving in the State of Nebraska. Nebraska is the 15th–largest state in the United States, with a land area of 77,355 square miles. Nebraska Blue Book 1994–95 at 9. As it is a predominantly rural state, automobiles are essential to transportation. Furthermore, in the rural areas of the state, no mass transit system exists. These characteristics of our state reflect the critical role driving plays in a Nebraska resident's day–to–day life.

In sum, the time is ripe for this court to reexamine its precedent finding operator's licenses to be mere privileges. Until we undertake this task, the punishing effect of license revocations will remain unclear.